672 S.E.2d 150

**In re: TAX ASSESSMENT OF FOSTER FOUNDATION'S WOODLANDS RETIREMENT COMMUNITY.**

No. 33891.

Supreme Court of Appeals of West Virginia.

Submitted: Sept. 3, 2008.

Decided: Nov. 5, 2008.

Dissenting Opinion of Justice Benjamin Jan. 9, 2009.

---

Daniel J. Konrad, Chad D. Camper, Huddleston Bolen LLP, Huntington, for the Appellant.

William T. Watson, Huntington, for the Appellee.

DAVIS, Justice:[1]

The appellant herein and petitioner below, the Foster Foundation (hereinafter "the Foundation"), appeals an order entered September 6, 2007, by the Circuit Court of Cabell County. In that order, the circuit court affirmed the decision of the appellee herein and respondent below, the Cabell County Commission (hereinafter "the County Commission" or "the Commission") sitting as the Board of Equalization and Review (hereinafter "the Board"), which had assigned an assessed value to the Foster Foundation's Woodlands Retirement Community (hereinafter "the Woodlands") of $29,759,000.00 for the 2007 tax year. On appeal to this Court, the Foundation contends that the procedure for challenging tax assessments and the burden of proof imposed upon taxpayers·violate due process and that neither the Board nor the circuit court properly considered the unique nature of the Woodlands as a tax-exempt corporation in obtaining its assessed value. Upon a review of the parties' arguments, the record designated for appellate consideration, and the pertinent authorities, we affirm the decision of the Cabell County Circuit Court.

## I.

### FACTUAL AND PROCEDURAL HISTORY

■ The Foster Foundation is a § 501(c)(3)[2] non-profit organization that has been in existence since 1922.[3] Operated by the Foundation, the Woodlands Retirement Community is described by the Foundation as a "home for the aged not conducted for private profit." The Woodlands facilities accommodate approximately 300 residents and provide such housing in the form of independent living facilities, assisted living facilities, and nursing home facilities. All residents of the Woodlands are assured of continued housing for the remainder of their life at the Woodlands regardless of their ability to pay.[4]

---

1. Pursuant to an administrative order entered on September 11, 2008, the Honorable Thomas E. McHugh, Senior Status Justice, was assigned to sit as a member of the Supreme Court of Appeals of West Virginia commencing September 12, 2008, and continuing until the Chief Justice determines that assistance is no longer necessary, in light of the illness of Justice Joseph P. Albright.

2. An entity, such as the Foster Foundation, qualifies for exemption from federal income tax if it is "organized and operated exclusively for ... charitable ... purposes." 26 U.S.C. § 501(c)(3) (2005) (Supp.2007). Property belonging to such an entity, however, may still be subject to property tax if it does not satisfy the exemption criteria. See Syl. pt. 3, Wellsburg Unity Apartments, Inc. v. County Comm'n of Brooke County, 202 W.Va. 283, 503 S.E.2d 851 (1998) ("In order for real property to be exempt from ad valorem property taxation, a two-prong test must be met: (1) the corporation or other entity must be deemed to be a charitable organization under 26 U.S.C. § 501(c)(3) or 501(c)(4) as is provided in 110 C.S.R. § 3–19.1; and (2) the property must be used exclusively for charitable purposes and must not be held or leased out for profit as is provided in W. Va.Code § 11–3–9."). Cf. Syl. pt. 2, id. ("Real property that is used exclusively for charitable purposes and is not held or leased for profit is exempt from ad valorem real property taxation. W. Va.Code § 11–3–9 (1990).").

3. The Foster Foundation received its § 501(c)(3) status in 1923.

4. The provision of lifetime care for residents is a requirement for homes for the aged that have § 501(c)(3) status. As we explained in footnote 30 of Maplewood Community, Inc. v. Craig:

> For a corporation providing residential services for the aged to be viewed as a 501(c)(3) charitable organization exempt from federal income tax, the Internal Revenue Service requires that the organization must be able to demonstrate that it "operates in a manner designed to satisfy the three primary needs of aged persons" which are housing, health care, and financial security. As part of proving that it meets the financial security need of its residents, such organizations "must be committed to an established policy, whether written or in

The Woodlands property is comprised of approximately 93 acres of real property and numerous buildings [5] with a combined square footage of roughly 331,993 square feet.

The instant controversy began when the Foster Foundation received a letter dated January 2, 2007, from the Cabell County Assessor's Office notifying it of the assessed value for the Woodlands for the 2007 tax year in the amount of $38,137,300.00. On January 31, 2007, the Foundation filed an "Application for Review of Property Assessment" with the Cabell County Commission challenging the amount of this assessment; a hearing was set for February 9, 2007, before the Cabell County Commission sitting as the Board of Equalization and Review.[6] Prior to the February 9, 2007, hearing, the Assessor reduced the assessed value of the Woodlands to $31,190,000.00 because, as the Assessor claimed, a modifier had erroneously been applied to obtain the original assessed value for this property.

██ At the Board's February 9, 2007, hearing, the Foster Foundation presented expert testimony by Robert K. Withers, a certified general real estate appraiser.[7] Mr. Withers provided a written appraisal report and testified that, in his opinion, the fair market value [8] of the Woodlands is $14,900,000.00. The Assessor provided evidence through the testimony of its employee, Brian Daniels, who is certified but not licensed [9] as a real estate appraiser. Mr. Daniels testified as to the methods he had employed in arriving at the assessed value and the properties he had considered as compara-

ble to the Woodlands. Following the hearing, the Commission, sitting as the Board, by order entered February 22, 2007, further reduced the assessed value of the Woodlands to $29,759,000.00.

The Foster Foundation then appealed the Commission's adverse ruling to the Circuit Court of Cabell County. The circuit court held a hearing, and, by order entered September 6, 2007, affirmed the Commission's decision, concluding that "the Plaintiff [Foster Foundation] failed to prove by clear and convincing evidence that the Assessor erroneously valued its property. Accordingly, the determination of value by the Assessor must stand[,] and the relief requested by the taxpayer must be denied." From the circuit court's adverse ruling, the Foster Foundation now appeals to this Court.

## II.

### STANDARD OF REVIEW

██ In this case, the Foster Foundation requests this Court to review the circuit court's ruling adopting the Board's revised assessment of the value of the Foundation's Woodlands property and raises issues regarding the constitutionality of the taxpayer appeals process and questioning the correctness of the assessed value of its property. Generally, a multifaceted standard of review is applicable to decisions of a circuit court: "This Court reviews the circuit court's final order and ultimate disposition under an abuse of discretion standard. We review

actual practice, of maintaining in residence any persons who become unable to pay their regular charges." Rev. Rul. 72–124, 1972–1 I.R.B. 145.
216 W.Va. 273, 283 n. 30, 607 S.E.2d 379, 389 n. 30 (2004) (per curiam).

5. The main building of the complex is comprised of 283,693 square feet. The Woodlands also has twenty-three additional single-structure homes, each of which has 2,100 square feet.

6. *See generally* W. Va.Code § 11–3–24 (1979) (Repl.Vol.2008). For further discussion of this statutory language, see Section III.A., *infra.*

7. Mr. Withers is certified as a general real estate appraiser in the States of West Virginia, Ohio, and Kentucky.

8. Assessments of property for taxation purposes are based on the property's "true and actual" value, W. Va.Code § 11–3–1 (1977) (Repl.Vol. 2008), which has been defined as "its market value." Syl. pt. 3, in part, *Killen v. Logan County Comm'n,* 170 W.Va. 602, 295 S.E.2d 689 (1982). See *infra* Section III.C. for further discussion of these authorities.

9. W. Va.Code § 30–38–1(c)(5) (2001) (Repl.Vol. 2002) exempts officers and employees "of the state of West Virginia or a political subdivision thereof" from the real estate licensure and certification requirements "when the employee or officer is performing his or her official duties[.]"

challenges to findings of fact under a clearly erroneous standard; conclusions of law are reviewed *de novo.*" Syl. pt. 4, *Burgess v. Porterfield,* 196 W.Va. 178, 469 S.E.2d 114 (1996). *Accord* Syl. pt. 2, *Walker v. West Virginia Ethics Comm'n,* 201 W.Va. 108, 492 S.E.2d 167 (1997) ("In reviewing challenges to the findings and conclusions of the circuit court, we apply a two-prong deferential standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.").

■ With respect to the questions of law raised by the Foundation concerning the constitutionality of the governing statutes, we employ a *de novo* standard of review: "[i]nterpreting a statute or an administrative rule or regulation presents a purely legal question subject to *de novo* review." Syl. pt. 1, *Appalachian Power Co. v. State Tax Dep't of West Virginia,* 195 W.Va. 573, 466 S.E.2d 424 (1995). *Accord* Syl. pt. 1, *Chrystal R.M. v. Charlie A.L.,* 194 W.Va. 138, 459 S.E.2d 415 (1995) ("Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review.").[10]

■ Finally, we utilize a plainly wrong standard to review the Foundation's assignment of error challenging the assessed value of its property:

"'[a]n assessment made by a board of review and equalization and approved by the circuit court will not be reversed when supported by substantial evidence unless plainly wrong.' Syl. pt. 1, *West Penn Power Co. v. Board of Review and Equalization,* 112 W.Va. 442, 164 S.E. 862 (1932)." Syl. pt. 3, *Western Pocahontas Properties, Ltd. v. County Comm'n of Wetzel County,* 189 W.Va. 322, 431 S.E.2d 661 (1993).

Syl. pt. 4, *In re Petition of Maple Meadow Mining Co. for Relief from Real Prop. Assessment For the Tax Year 1992,* 191 W.Va. 519, 446 S.E.2d 912 (1994). *But see In re Tax Assessment Against Am. Bituminous Power Partners, L.P.,* 208 W.Va. 250, 255, 539 S.E.2d 757, 762 (2000) ("[J]udicial review of a decision of a board of equalization and review regarding a challenged tax-assessment valuation is limited to roughly the same scope permitted under the West Virginia Administrative Procedures Act, W. Va.Code. ch. 29A. In such circumstances, a circuit court is primarily discharging an appellate function little different from that undertaken by this Court; consequently, our review of a circuit court's ruling in proceedings under [W. Va.] Code] § 11–3–25 is *de novo.*" (footnote and citation omitted)).[11]

In light of these standards, we proceed to consider the parties' arguments.

## III.

### DISCUSSION

On appeal to this Court, the Foster Foundation assigns three errors to the circuit court's ruling: (1) the procedure for challenging tax assessments violates due process because the County Commission, sitting as the Board of Equalization and Review, is not impartial; (2) the burden of proof required of a taxpayer challenging a tax assessment violates due process; and (3) the Board and the circuit court both failed to consider the special status of the Woodlands as a § 501(c)(3) corporation in obtaining its assessed value. We will consider each of these alleged errors in turn.

### A. Impartiality of County Commission Sitting as Board of Equalization and Review

■ The Foster Foundation first argues that the Cabell County Commission sitting as the Board of Equalization and Review is not an impartial tribunal, and thus, the Foundation was denied due process by having to

---

10. A more specific standard of review applicable to challenges regarding the constitutionality of statutory provisions also governs this case and will be discussed more fully with the parties' arguments in this regard. *See* Section III.A., *infra.*

11. An additional standard of review, specifically regarding challenges to tax assessments, is also applicable to the case *sub judice.* That standard will be discussed more fully in connection with the parties' arguments on that issue in Section III.C., *infra.*

present its appeal of its ad valorem real property tax assessment to such body. Although the circuit court did not specifically decide this particular issue in rendering its final order, most probably because the Foundation did not assign error to this procedure during those proceedings,[12] we nevertheless may consider it for the first time on appeal to this Court insofar as it raises an issue of constitutionality that is central to our disposition of this case. *See* Syl. pt. 2, *Louk v. Cormier*, 218 W.Va. 81, 622 S.E.2d 788 (2005) ("A constitutional issue that was not properly preserved at the trial court level may, in the discretion of this Court, be addressed on appeal when the constitutional issue is the controlling issue in the resolution of the case.").

In West Virginia, a taxpayer aggrieved by what he/she believes to be an erroneous tax assessment may file a protest with the assessor "for information regarding the classification and taxability of his[/her] property." W. Va.Code § 11-3-24a (1961) (Repl.Vol.2008). Then "[t]he assessor shall decide the question by either sustaining the protest and making proper corrections, or by stating, in writing if requested, the reasons for his refusal." *Id.* In the case *sub judice*, it is not apparent that the Foster Foundation applied to the Assessor for relief from its assessment of the Woodlands property, but the Assessor did review, correct, and reduce its initial assessment.

Instead, the Foster Foundation pursued relief from the allegedly erroneous assess-ment by filing an application for review thereof with the County Commission, which is responsible for reviewing challenges regarding the amount of property tax assessments. The Legislature requires all county commissions to annually sit as a board of equalization and review "for the purpose of reviewing and equalizing the assessment made by the assessor." W. Va.Code § 11-3-24 (1979) (Repl.Vol.2008). It is this dual role of the Cabell County Commission in the instant case, as both the County Commission and the Board of Equalization and Review, to which the Foundation objects and upon which it bases its due process claim. The statute establishing this dual function of county commissions and describing the commissions's duties, W. Va.Code § 11-3-24, provides, in pertinent part:

> The county commission shall annually ... meet for the purpose of reviewing and equalizing the assessment made by the assessor.... At the first meeting, the assessor shall submit the property books for the current year, which shall be complete in every particular, except that the levies shall not be extended. The assessor and his assistants shall attend and render every assistance possible in connection with the value of property assessed by them. The commission shall proceed to examine and review the personal property and the description and value of real estate liable to assessment which was omitted by the assessor. They shall correct all errors in the names of persons, in the description

---

12. In its "Petition for Appeal" filed in the Circuit Court of Cabell County on March 23, 2007, the Foundation lists two "Assignments of Error," neither of which challenges the constitutionality of the County Commission sitting as the Board of Equalization and Review to decide taxpayers' appeals of tax assessments:

> The Foster Foundation assigns as error the County Commission's refusal to lower the assessed value of the Woodlands to its fair market value of $14,900,000 pursuant to West Virginia Code section 11-3-1, which requires that, "All property shall be assessed annually ... at its true and actual value." True and actual value means fair market value, which is what the property would sell for if it were sold on the open market. *See Kline v. McCloud*, 174 W.Va. 369, 326 S.E.2d 715 (1984).

> The Foster Foundation assigns as error that an employee of the county, who is not a li-censed real estate appraiser as required by West Virginia law, can assess the value of a taxpayers' real property and then place the burden on the taxpayer to rebut the assessed value by hiring a duly licensed real estate appraiser under West Virginia law. The presumption of validity given to an unlicensed real estate appraiser's assessed value breaches the due process safeguards afforded the taxpayers of the State of West Virginia and improperly frustrates the purpose of West Virginia Code section 11-3-1 of appraising real property at its fair market value.

Thereafter, on April 9, 2007, the Foundation, in compliance with W. Va.Code § 58-3-3 (1923) (Repl.Vol.2005), filed a "Bill of Exceptions" to the Board of Review's decision. The assignments of error set forth therein are identical to those contained in the Foundation's "Petition for Appeal," quoted above.

and valuation of property, and they shall cause to be done whatever else may be necessary to make the valuation comply with the provisions of this chapter. But in no case shall any question of classification or taxability be considered or reviewed. If the commission determine[s] that any property or interest is assessed at more or less than its true and actual value, it shall fix it at the true and actual value. . . .

The clerk of the county commission shall publish notice of the time, place and general purpose of the meeting as a Class II legal advertisement . . . and the publication area for such publication shall be the county involved. . . .

If any person fails to apply for relief at this meeting, he shall have waived his right to ask for correction in his assessment list for the current year, and shall not thereafter be permitted to question the correctness of his list as finally fixed by the county commission, except on appeal to the circuit court. . . .

With respect to this statutory scheme, the Foster Foundation argues that the tribunal for hearing taxpayer appeals is not impartial and thus denies appealing taxpayers constitutionally guaranteed due process of law. *See* U.S. Const. amend. XIV, § 1 ("[N]or shall any State deprive any person of life, liberty, or property, without due process of law[.]"); W. Va. Const. art. III, § 10 ("No person shall be deprived of life, liberty, or property, without due process of law, and the judgment of his peers."). *See also* Syl. pt. 2, *State ex rel. Ellis v. Kelly*, 145 W.Va. 70, 112 S.E.2d 641 (1960) ("Due process of law, within the meaning of the State and Federal constitutional provisions, extends to actions of administrative officers and tribunals, as well as to the judicial branches of the governments."). In this regard, the Foundation suggests that because the County Commission, which is the beneficiary of the county's tax revenues and has a direct financial interest in tax appeals cases, also sits as the Board of Equalization of Review to hear and decide taxpayers' appeals challenging the assessed value of their property, it is not an impartial hearing tribunal. Such impartiality, claims the Foundation, constituted a denial of due process by depriving it of the opportunity to receive a fair hearing before a neutral and impartial body. *See, e.g., Concrete Pipe & Prods. of California, Inc. v. Construction Laborers Pension Trust for S. California*, 508 U.S. 602, 617, 113 S.Ct. 2264, 2277, 124 L.Ed.2d 539 (1993) ("[D]ue process requires a 'neutral and detached judge in the first instance[.]'" (quoting *Ward v. Village of Monroeville*, 409 U.S. 57, 61–62, 93 S.Ct. 80, 84, 34 L.Ed.2d 267 (1972))). In further support of its argument, the Foundation references the duty of county commissions to "supervise the general management of the fiscal affairs and business of each county." W. Va.Code § 7–1–5 (1980) (Repl.Vol.2006). *See also* W. Va. Const. art. IX, § 11 ("[C]ounty commissions . . . shall . . . have the superintendence and administration of the . . . fiscal affairs of their counties[.]"). The Foundation argues that, because the County Commission is unquestionably interested in maximizing its revenue, through tax assessments and otherwise, taxpayers challenging tax assessments will not have a hearing by an impartial tribunal when the County Commission sits as the Board. *See Rawl Sales & Processing Co. v. County Comm'n of Mingo County*, 191 W.Va. 127, 133, 443 S.E.2d 595, 601 (1994) (Neely, J., dissenting) ("[T]he county commission lacks expertise in property evaluation but is extraordinarily knowledgeable about the government's need for money, an ingrained bias that is particularly harmful to non-voting entities.").

The Commission responds that the appeals procedure does not create a conflict of interest and does not unconstitutionally deny appealing taxpayers due process of law. With regard to the tax year in issue in this case, 2007, the Commission asserts that, in Cabell County, over 27,000 pieces of property had increased assessment values; of those, only twenty-one property owners requested a hearing on their assessments, and all except one of those property owners either had their dispute resolved, did not appear for the hearing, or received a lower assessment. The Woodlands received a lower tax assessment. Although the Commission concedes that there might appear to be a conflict of interest, the pecuniary interest of the Commission in tax revenues is slight: for every one

dollar in ad valorem tax revenue, the County Commission receives sixteen cents while the Cabell County Board of Education receives sixty-seven cents. Thus, argues the Commission, it has no real incentive to artificially inflate tax assessments. The Commission finally contends that the Legislature has designated the County Commission to sit as the Board of Equalization and Review to hear tax appeals; if this practice is determined to be unconstitutional, the Commission suggests that chaos will result until the Legislature can appoint another, independent body.

We must determine, then, whether W. Va. Code § 11–3–24 is constitutional insofar as it requires county commissions to sit as boards of equalization and review for the purpose of hearing and deciding appeals of taxpayers' property tax assessments. Our prior decisions have repeatedly counseled that statutes are presumed to be constitutional.

"In considering the constitutionality of a legislative enactment, courts must exercise due restraint, in recognition of the principle of the separation of powers in government among the judicial, legislative and executive branches. Every reasonable construction must be resorted to by the courts in order to sustain constitutionality, and any reasonable doubt must be resolved in favor of the constitutionality of the legislative enactment in question. Courts are not concerned with questions relating to legislative policy. The general powers of the legislature, within constitutional limits, are almost plenary. In considering the constitutionality of an act of the legislature, the negation of legislative power must appear beyond reasonable doubt." Syl. pt. 1, *State ex rel. Appalachian Power Company v. Gainer*, 149 W.Va. 740, 143 S.E.2d 351 (1965).

Syl. pt. 1, *Louk v. Cormier*, 218 W.Va. 81, 622 S.E.2d 788. Thus,

" '[w]hen the constitutionality of a statute is questioned every reasonable construction of the statute must be resorted to by a court in order to sustain constitutionality, and any doubt must be resolved in favor of the constitutionality of the legislative enactment.' Point 3, Syllabus, *Willis v. O'Brien*, 151 W.Va. 628[, 153 S.E.2d 178 (1967) ]." Syllabus Point 1, *State ex rel. Haden v. Calco Awning & Window Corp.*, 153 W.Va. 524, 170 S.E.2d 362 (1969).

Syl. pt. 1, *U.S. Steel Mining Co., LLC v. Helton*, 219 W.Va. 1, 631 S.E.2d 559 (2005), *cert. denied*, 547 U.S. 1179, 126 S.Ct. 2355, 165 L.Ed.2d 279 (2006).

With specific respect to legislative enactments pertaining to taxation, we have held that "[s]tatutes governing the imposition of taxes are generally construed against the government and in favor of the taxpayer. However, *statutes establishing administrative procedures for* collection and *assessment of taxes will be construed in favor of the government.*" Syl. pt. 1, *Calhoun County Assessor v. Consolidated Gas Supply Corp.*, 178 W.Va. 230, 358 S.E.2d 791 (1987) (emphasis added). Insofar as the challenged statute establishes the procedure that taxpayers must follow to contest their assessed taxes, W. Va.Code § 11–3–24 must be construed in favor of the government, represented here by the Commission. Nevertheless, the Foundation may overcome this presumption and establish that W. Va.Code § 11–3–24 is unconstitutional if it satisfies the burden of proof reiterated in Syllabus point 1 of *Schmehl v. Helton*, 222 W.Va. 98, 662 S.E.2d 697 (2008):

" 'To establish that a taxing statute, valid on its face, is so unreasonable or arbitrary as to amount to a denial of due process of law when applied in a particular case, the taxpayer must prove by clear and cogent [13] evidence facts establishing unrea-

---

**13.** "Cogent" is defined as "[c]ompelling or convincing." Black's Law Dictionary 276 (8th ed.2004). Thus, "clear and cogent evidence" may also be construed as "clear and convincing evidence." *See, e.g., McKesson Water Prods. Co. v. Director, Div. of Taxation*, 23 N.J.Tax 449, 456 n. 3 (N.J.Super.Ct.App.Div.2007) (recognizing change of "clear and cogent" to "clear and con-

vincing" by statutory amendment); *Baum v. Dubord*, No. 201247, 1998 WL 1990408, at *1 (Mich.Ct.App. Aug. 7, 1998) (per curiam) (explaining that " 'clear and cogent' proof . . . is very similar to the 'clear and convincing' standard" (citation omitted)); *Louis Dreyfus Corp. v. Huddleston*, 933 S.W.2d 460, 468 n. 5 (Tenn.Ct. App.1996) (observing that "[t]he 'clear and co-

sonableness or arbitrariness.' Point 4, Syllabus, *Norfolk and Western Railway Company v. Field,* 143 W.Va. 219[, 100 S.E.2d 796 (1957) ]." Syllabus Point 2, *State ex rel. Haden v. Calco Awning[ & Window Corp.],* 153 W.Va. 524, 170 S.E.2d 362 (1969).

(Footnote added). Here, however, the Foster Foundation does not argue that W. Va. Code § 11–3–24 is unconstitutional as applied; rather, the Foundation argues only that this statute is unconstitutional, which questions the statute's facial constitutionality.

In this regard, the Foundation argues that W. Va.Code § 11–3–24 is unconstitutional because the County Commission, sitting as the Board of Equalization and Review, is not an impartial tribunal to hear taxpayers' appeals insofar as the Commission is the entity responsible for administering the fiscal affairs of Cabell County and the tax revenue at issue provides the funding for such fiscal affairs. *See* W. Va. Const. art. IX, § 11 (establishing duty of county commissions over county's fiscal affairs); W. Va.Code § 7–1–5 (same). Although the Foundation makes this assertion, it does not offer specific proof of the Commission's, or the Commissioners', partiality. Rather, the Foundation contends generally that "[t]he County Commission has an impermissible conflict of interest in serving as both a decision maker on the Foster Foundation's appeal of an excessive tax assessment and a beneficiary of an increased tax revenue resulting from a higher assessed value of Woodlands" without providing factual support therefor. Appellant's Br. at p. 9. Before this Court, the Foundation similarly avers that

> [t]he County Commission's interest in maximizing revenue is at odds with granting reductions in the assessment values of real property (regardless of validity of claims) because it would directly result in a reduction of the tax base.

> For example, the Foster Foundation believes its assessment was excessive by approximately $14,859,000. Had the Foster

Foundation been successful before the County Commission, the County's tax base would have been reduced by approximately $200,000 annually. In every contested valuation there is an inherent conflict between the County Commission's inconsistent roles as the overseer of the county finances and as the tribunal for hearing individual tax appeals. This conflict is magnified as the amount in controversy increases.

Appellant's Br. at pp. 9–10. In making these assertions, though, the Foundation does not present any specific evidence to suggest how the county commissioners, themselves, directly benefitted from these funds or to indicate the commissioners had a direct, pecuniary interest in such revenue. In fact, the applicable statutory law establishes that county commissioners' salaries are set by the Legislature, not by the commissioners, themselves. *See* W. Va.Code § 7–1–5 (discussing compensation of county commissioners); W. Va.Code § 7–7–4 (2006) (Repl.Vol.2006) (defining amount of compensation of county commissioners).

W. Va.Code § 11–3–24 sets forth the procedure by which a county commission sits as a board of equalization and review to finalize the assessments rendered by the county assessor, discusses how those assessments are to be reviewed, and permits aggrieved taxpayers to apply for relief from such assessments. Insofar as we have not previously determined the constitutionality of such a review process, it is instructive to look to decisions of other jurisdictions for guidance.

When faced with cases questioning the impartiality of a hearing tribunal, the United States Supreme Court generally has found a hearing tribunal to be partial when there exists a direct pecuniary interest in the outcome of the litigation. *See Tumey v. Ohio,* 273 U.S. 510, 523, 47 S.Ct. 437, 441, 71 L.Ed. 749 (1927) (finding mayor serving as judge was not impartial decision maker where mayor received additional compensation from fees and costs he levied against violators of

gent' standard is essentially similar to the 'clear and convincing' standard" (citation omitted)). Therefore, to maintain consistency throughout this opinion, we will refer to this burden of proof

as "clear and convincing" rather than "clear and cogent," except where the context otherwise requires.

prohibition laws, citing mayor's "direct, personal, substantial pecuniary interest" in generation of such revenue). *See also Concerned Citizens of S. Ohio, Inc. v. Pine Creek Conservancy Dist.*, 429 U.S. 651, 652, 97 S.Ct. 828, 829, 51 L.Ed.2d 116 (1977) (per curiam) (remanding case for full consideration of issues, including plaintiffs' claim that conservancy court did not provide "hearing before ... impartial judicial officer" where judges of conservancy court decided whether conservancy districts should be formed and such judges received special compensation for work performed in conjunction with such conservancy courts); *Gibson v. Berryhill*, 411 U.S. 564, 579, 93 S.Ct. 1689, 1698, 36 L.Ed.2d 488 (1973) (reiterating that "[i]t is sufficiently clear from our cases that those with substantial pecuniary interest in legal proceedings should not adjudicate these disputes" (citation omitted)); *Ward v. Village of Monroeville*, 409 U.S. 57, 58, 93 S.Ct. 80, 82, 34 L.Ed.2d 267 (1972) (determining that mayor, sitting as judge over traffic offenses and imposing fines therefor, was not impartial where mayor also was responsible for accounting for village revenues which were derived, in large part, from "fines, forfeitures, costs and fees imposed by him in his mayor's court").

However, when no such pecuniary interest is present, the United States Supreme Court typically has found the tribunal to satisfy the requirements of due process. *See Dugan v. Ohio*, 277 U.S. 61, 65, 48 S.Ct. 439, 440, 72 L.Ed. 784 (1928) (ruling that mayor serving as judge had relationship too remote with city finances to warrant presumption of bias in prohibition law cases over which he presided and imposed fines where mayor received fixed salary, did not receive additional compensation from fines he imposed as judge, and was not solely responsible for expenditure of town's revenue). *Cf. Concrete Pipe & Prods. of California, Inc. v. Construction Laborers Pension Trust for S. California*, 508 U.S. at 618–20, 113 S.Ct. at 2277–78, 124 L.Ed.2d 539 (declining to find denial of due process where "initial determination [wa]s

made by a party acting in an enforcement capacity" and losing party was thereafter entitled to subsequent adjudicatory proceeding before arbitrator).

 While the Foundation makes broad assertions of a pecuniary conflict of interest in the case *sub judice*, the Foundation has not proved the Cabell County Commissioners' partiality or that their dual role as members of the Board of Equalization and Review was compromised by this alleged divided loyalty. There is no indication in the facts of the case presently before us that any of the Cabell County Commissioners received additional compensation for upholding the Assessor's tax assessments or that the County Commission, itself, benefitted from this revenue. Thus, having reviewed the statute at issue herein and the parties' arguments regarding its constitutionality, we conclude that W. Va.Code § 11–3–24 is valid on its face. Accordingly, we hold that W. Va.Code § 11–3–24 (1979) (Repl.Vol.2008), which establishes the procedure by which a county commission sits as a board of equalization and review and decides taxpayers' challenges to their property tax assessments, is facially constitutional. Therefore, because the Foundation has not presented evidence to prove that it was denied due process when the Commission sat as the Board of Equalization and Review to hear and decide its appeal of the Woodlands property's tax assessment, the Foundation has not sustained its burden of proving that W. Va.Code § 11–3–24 is unconstitutional.

### B. Taxpayer's Burden of Proof

The Foster Foundation next argues that the burden of proof imposed upon the taxpayer challenging the correctness of an assessment, *i.e.*, by clear and convincing proof, denies taxpayers due process because no corresponding burden is placed upon the Assessor.[14] Although the Foundation assigned error to this issue in the proceedings before

14. To the contrary, "[i]t is a general rule that valuations for taxation purposes fixed by an assessing officer are presumed to be correct[.]" Syl. pt. 7, in part, *In re Tax Assessments Against*

*Pocahontas Land Co.*, 172 W.Va. 53, 303 S.E.2d 691 (1983). Further discussion as to the presumption of correctness accorded to assessors' assessments is set forth in Section III.C., *infra*.

the circuit court,[15] the court did not specifically rule upon the constitutionality of the clear and convincing burden of proof imposed upon taxpayers appealing allegedly erroneous tax assessments. Nevertheless, the circuit court implicitly found this burden of proof to be constitutional by ruling that the Foundation "failed to prove by clear and convincing evidence that the Assessor erroneously valued its property."

While much of the law governing the Foundation's appeal is grounded in statutes, the burden of proof imposed upon the appealing taxpayer has not been established by the Legislature and thus has been defined by this Court. However, from the cases cited by the circuit court in its final order, it is apparent that a conflict of authority has been created by our prior inconsistent decisions: we have held both that the aggrieved taxpayer must prove his/her claim for relief by clear and convincing evidence[16] and that the taxpayer must satisfy a preponderance of the evidence burden of proof.[17] These two burdens of proof differ vastly, and, before we can consider the constitutionality of the burden of proof imposed upon taxpayers, and the parties' arguments with regard thereto, we first must reconcile our prior decisions to define the applicable burden of proof.

▇▇▇ We consistently have held that an assessor's valuation of property for purposes of taxation is presumed to be correct. *See, e.g.*, Syl. pt. 2, in part, *Western Pocahontas Props., Ltd. v. County Comm'n of Wetzel County*, 189 W.Va. 322, 431 S.E.2d 661 (1993) ("As a general rule, there is a presumption that valuations for taxation purposes fixed by an assessor are correct."); Syl. pt. 7, in part, *In re Tax Assessments Against Pocahontas Land Co.*, 172 W.Va. 53, 303 S.E.2d 691 (1983) ("It is a general rule that valuations

for taxation purposes fixed by an assessing officer are presumed to be correct."). *Accord Bankers Pocahontas Coal Co. v. County Court of McDowell County*, 135 W.Va. 174, 179, 62 S.E.2d 801, 804 (1950) ("It is a general rule that valuations for taxation purposes fixed by an assessing officer are presumed to be correct."), *overruled on other grounds by In re the Assessment of Shares of Stock of the Kanawha Valley Bank*, 144 W.Va. 346, 109 S.E.2d 649 (1959); *In re Tax Assessments Against Pocahontas Land Co.*, 172 W.Va. at 61, 303 S.E.2d at 699 (same).

To overcome this presumption, we repeatedly have held further that a taxpayer challenging an assessor's tax assessment before a board of equalization and review must present clear and convincing evidence to demonstrate that the assessor's assessment is erroneous. This standard has been reiterated numerous times by this Court: "Arbitrary or unjust action by an assessor in fixing the value of land must be shown by *clear and cogent proof* in order that the complaining taxpayer may be given relief from allegedly excessive valuation." Syl. pt. 2, *Bankers Pocahontas Coal Co. v. County Court of McDowell County*, 135 W.Va. 174, 62 S.E.2d 801 (emphasis added). *Accord* Syl. pt. 2, in part, *Western Pocahontas Props., Ltd. v. County Comm'n of Wetzel County*, 189 W.Va. 322, 431 S.E.2d 661 ("As a general rule, there is a presumption that valuations for taxation purposes fixed by an assessor are correct.... The burden is on the taxpayer challenging the assessment to demonstrate by *clear and convincing evidence* that the tax assessment is erroneous." (emphasis added)); Syl. pt. 7, *In re Tax Assessments Against Pocahontas Land Co.*, 172 W.Va. 53, 303 S.E.2d 691 ("It is a general rule that valuations for taxation

---

15. *See supra* note 12.

16. *See, e.g.*, Syl. pt. 2, in part, *Western Pocahontas Props., Ltd. v. County Comm'n of Wetzel County*, 189 W.Va. 322, 431 S.E.2d 661 (1993) ("As a general rule, there is a presumption that valuations for taxation purposes fixed by an assessor are correct.... The burden is on the taxpayer challenging the assessment to demonstrate by *clear and convincing evidence* that the tax assessment is erroneous." (emphasis added)).

17. *See, e.g.*, Syl. pt. 8, *Killen v. Logan County Comm'n*, 170 W.Va. 602, 295 S.E.2d 689 ("An objection to any assessment may be sustained only upon the presentation of competent evidence, such as that equivalent to testimony of qualified appraisers, that the property has been under- or over-valued by the tax commissioner and wrongly assessed by the assessor. The objecting party, whether it be the taxpayer, the tax commissioner or another third party, must show by a *preponderance of the evidence* that the assessment is incorrect." (emphasis added)).

purposes fixed by an assessing officer are presumed to be correct. The burden of showing an assessment to be erroneous is, of course, upon the taxpayer, and *proof* of such fact *must be clear.*" (emphasis added)). *See also In re Tax Assessment Against Am. Bituminous Power Partners, L.P.*, 208 W.Va. at 254, 539 S.E.2d at 761 ("A taxpayer's initial avenue for relief from an allegedly erroneous property valuation lies with the county commission, sitting as a board of equalization and review. The burden upon the taxpayer to demonstrate error with respect to the State's valuation is heavy in these adjudicative proceedings: It is a general rule that valuations for taxation purposes fixed by an assessing officer are presumed to be correct. The burden of showing an assessment to be erroneous is, of course, upon the taxpayer, and *proof* of such fact *must be clear.*" (emphasis added) (quotations and citations omitted)); *In re Nat'l Bank of West Virginia at Wheeling*, 137 W.Va. 673, 687, 73 S.E.2d 655, 664 (1952) ("The burden of showing an assessment to be erroneous is, of course, upon the taxpayer, and *proof* of such fact *must be clear.*" (emphasis added) (citations omitted)), *overruled on other grounds by In re the Assessment of Shares of Stock of the Kanawha Valley Bank*, 144 W.Va. 346, 109 S.E.2d 649 (1959); *Norfolk & W. Ry. Co. v. Board of Pub. Works*, 124 W.Va. 562, 570,

21 S.E.2d 143, 147 (1942) ("In order for the courts . . . to reverse or to interfere with the exercise of the taxing power, there must be *a clear showing* of the arbitrary abuse of that power . . . ." (emphasis added)).

Nevertheless, in the case of *Killen v. Logan County Commission*, 170 W.Va. 602, 295 S.E.2d 689 (1982), this Court determined that a taxpayer was required to satisfy only a preponderance of the evidence burden of proof in its challenge of the assessor's assessment. In this regard, we held, in Syllabus point 8, that

> [a]n objection to any assessment may be sustained only upon the presentation of competent evidence, such as that equivalent to testimony of qualified appraisers, that the property has been under- or overvalued by the tax commissioner and wrongly assessed by the assessor. The objecting party, whether it be the taxpayer, the tax commissioner or another third party, must show by a *preponderance of the evidence* that the assessment is incorrect.

(Emphasis added). The *Killen* case, however, appears to be an isolated instance [18] of employing the preponderance of the evidence standard in tax assessment cases and is an aberration in this Court's line of cases on this subject.[19] The discussion in the *Killen* opin-

**18.** Subsequently, this Syllabus point 8 from *Killen v. Logan County Commission*, 170 W.Va. 602, 295 S.E.2d 689 (1982), was quoted in a per curiam opinion, which also quoted Syllabus point 7 of *In re Tax Assessments Against Pocahontas Land Co.*, 172 W.Va. 53, 303 S.E.2d 691 (1983). *See Eastern Am. Energy Corp. v. Thorn*, 189 W.Va. 75, 428 S.E.2d 56 (1993) (per curiam). In resolving the issue as to the correct burden of proof a taxpayer is required to sustain, however, the opinion held the taxpayer to a rather confusing, almost hybrid standard of "clear and preponderating" evidence: "Because the record does not show that Eastern met its burden of showing by *clear and preponderating evidence* that the county assessment was incorrect, we find that [the] circuit court was correct in affirming the county assessment for the plant." *Eastern Am.*, 189 W.Va. at 79, 428 S.E.2d at 60 (emphasis added). Therefore, the *Eastern American* opinion, which has limited precedential weight as a per curiam decision, did not definitively adopt either the clear and convincing evidence or the preponderance of the evidence burden of proof. *See* Syl. pt. 2, *Walker v. Doe*, 210 W.Va. 490, 558 S.E.2d 290 (2001) ("This Court will use signed opinions when new points of law

are announced and those points will be articulated through syllabus points as required by our state constitution."). *See also* Syl. pt. 3, *Walker, id.* ("Per curiam opinions have precedential value as an application of settled principles of law to facts necessarily differing from those at issue in signed opinions. The value of a per curiam opinion arises in part from the guidance such decisions can provide to the lower courts regarding the proper application of the syllabus points of law relied upon to reach decisions in those cases.").

**19.** Although no other cases from this Court appear to have adopted the *Killen* preponderance of the evidence burden of proof, the United States Court of Appeals for the Fourth Circuit also has required taxpayers to prove their claim for relief by a preponderance of the evidence. *See CSX Transp., Inc. v. Board of Pub. Works of State of West Virginia*, 95 F.3d 318, 323 (4th Cir.1996) (citing footnote 27 in *Killen* and concluding that, "as the court noted in *Killen*, West Virginia courts apply the preponderance of evidence standard . . . to taxpayers' *initial* challenges to their tax assessments" (emphasis in original)).

ion adopting this standard does not cite any authority for this departure from the Court's previous holdings, and does not expressly overrule or modify such prior opinions.

The very next year, this Court returned to the clear and convincing burden of proof in the case of *In re Tax Assessments Against Pocahontas Land Co.*, 172 W.Va. 53, 303 S.E.2d 691 (1983), by again adopting this standard in a syllabus point: "It is a general rule that valuations for taxation purposes fixed by an assessing officer are presumed to be correct. The burden of showing an assessment to be erroneous is, of course, upon the taxpayer, and *proof* of such fact *must be clear.*" Syl. pt. 7, *id.* (emphasis added). The clear and convincing burden of proof subsequently was reiterated in Syllabus point 2 of *Western Pocahontas Properties, Ltd. v. County Commission of Wetzel County*, 189 W.Va. 322, 431 S.E.2d 661 (1993): "As a general rule, there is a presumption that valuations for taxation purposes fixed by an

assessor are correct.... The burden is on the taxpayer challenging the assessment to demonstrate by *clear and convincing evidence* that the tax assessment is erroneous." (Emphasis added).

Therefore, it is apparent from this survey of our prior decisions that the prevailing burden of proof to be borne by a taxpayer appealing his/her tax assessment is the clear and convincing burden of proof. Accordingly, in order to rectify the conflict created by our contrary opinions, we hold that a taxpayer challenging an assessor's tax assessment must prove by clear and convincing evidence that such tax assessment is erroneous. To the extent our prior decisions in *Killen v. Logan County Commission*, 170 W.Va. 602, 295 S.E.2d 689 (1982), and *Eastern American Energy Corp. v. Thorn*, 189 W.Va. 75, 428 S.E.2d 56 (1993) (per curiam), are inconsistent with this holding, they are expressly overruled.[20]

**20.** A majority of other jurisdictions also impose a clear and convincing burden of proof upon taxpayers appealing real property tax assessments. See *Kankakee County Bd. of Review v. Property Tax Appeal Bd.*, 131 Ill.2d 1, 22, 544 N.E.2d 762, 771, 136 Ill.Dec. 76, 85 (1989) ("The taxpayer who objects to an assessment on the basis of lack of uniformity bears the burden of proving the disparity of assessment valuations by *clear and convincing evidence.*" (emphasis added) (citation omitted)); *Nash Finch Co. v. Hall County Bd. of Equalization*, 191 Neb. 645, 648, 217 N.W.2d 170, 173 (1974) ("In an appeal to the county board of equalization or to the district court, and from the district court to this court, the burden of persuasion imposed on the complaining taxpayer is not met by showing a mere difference of opinion unless it is established by *clear and convincing evidence* that the valuation placed upon his property when compared with valuations placed on other similar property is grossly excessive and is the result of a systematic exercise of intentional will or failure of plain duty, and not mere errors of judgment." (emphasis added) (citation and internal quotations omitted)); *State of Nevada ex rel. State Bd. of Equalization v. Bakst*, 122 Nev. 1403, 1407, 148 P.3d 717, 721 (2006) (en banc) ("The burden of proof is on the taxpayer 'to show by *clear and satisfactory evidence* that any valuation established by the Nevada Tax Commission or the county assessor or equalized by the county board of equalization or the State Board of Equalization is unjust and inequitable.' " (emphasis added) (citing Nev.Rev.Stat. § 361.430) (footnote omitted)); *McNally v. Teaneck Township*, 75 N.J. 33, 44, 379 A.2d 446, 451 (1977) ("The contents of the report [certifying the assessments] are presumptively correct and the

taxpayers had the burden of overcoming that presumption by *clear and convincing evidence.*" (emphasis added) (citations omitted)); *In re Assessment of Ge Bauer Apartments*, 170 Or. 47, 58, 131 P.2d 962, 966 (1942) (observing that, in proceeding brought by taxpayer to challenge assessed value of property, taxpayer "assumed the burden of proving by *clear and convincing evidence* that the assessment of its property ... was in excess of its true cash value or that the assessment was not reasonably proportionate to assessed valuations of similar properties" (emphasis added) (citations omitted)); *Edmondson Mgmt. Serv., Inc. v. Woods*, 603 S.W.2d 716, 717 (Tenn.1980) ("The burden of proof is upon the taxpayer to prove that the assessment made is incorrect and to prove its right to recovery by *clear and convincing evidence.*" (emphasis added)); *Pier 67, Inc. v. King County*, 89 Wash.2d 379, 384, 573 P.2d 2, 5 (1977) ("The taxpayer has the burden of establishing by *clear and convincing evidence* that the valuations and assessments are illegal." (emphasis added) (citation omitted)). *But see Board of Assessment Appeals v. Sampson*, 105 P.3d 198, 204 (Colo.2005) ("[A] protesting taxpayer must prove that the assessor's valuation is incorrect by a *preponderance of the evidence* in a de novo BAA [Board of Assessment Appeals] proceeding." (BAA proceeding is akin to circuit court review in West Virginia) (emphasis added)); *Mazourek v. Wal–Mart Stores, Inc.*, 831 So.2d 85, 89 (Fla.2002) ("The property appraiser's assessment is presumed correct, but such presumption is lost where the taxpayer demonstrates by a *preponderance of the evidence* that the property appraiser 'has failed to consider properly' the section 193.011 factors [to arrive

Having determined the burden of proof applicable to the Foundation's appeal of the Woodlands' tax assessment, we return now to the parties' arguments regarding the constitutionality thereof. The Foundation contends that the burden of proof of a taxpayer in a case challenging a tax assessment is unconstitutional and violative of due process because neither the Assessor nor the County Commission have a correspondingly heavy burden of proof. In this regard, the Foundation states that the Assessor's initial assessment was presumed to be correct and that it was required to prove that the Assessor's initial assessment was incorrect by clear and convincing evidence. To meet this standard, the County Commission notified the Foundation as to the evidence required, by letter dated January 24, 2007, as follows: "Please be advised it will be necessary for you to present *'Clear and convincing evidence'*, which by definition means **'formal appraisals and/or expert testimony by qualified people'**, to prove that the assessment is in fact erroneous." [21] (Emphasis in original).

Thus, the Foundation claims that it was required to employ a certified real estate appraiser and to submit his formal report and testimony. By contrast, the Assessor was not required to submit any specific evidence, is not required to be licensed,[22] and submitted only oral testimony during the Board's hearing. Furthermore, the Foundation contends that, during the circuit court proceedings, the County Commission did not provide any evidence to support its assessment. This disparity in the evidence required of each party, asserts the Foundation, denied it of due process.

The County Commission replies that this Court has previously placed the burden on complaining taxpayers to demonstrate that their assessments are incorrect by clear and convincing evidence. *Citing In Re: Tax Assessment Against Am. Bituminous Power Partners, L.P.*, 208 W.Va. 250, 539 S.E.2d 757. The Commission explains that it advised taxpayers of the types of evidence they

---

at just valuation of property]." (emphasis added) (citing Fla. Stat. § 194.301 (1997))); *Frank v. Assessors of Skowhegan*, 329 A.2d 167, 172 (Me. 1974) ("Unless it was error of law for the assessors to employ the appraisal approach which they used, it was the burden of the taxpayer in the Court below to establish by a *fair preponderance of the evidence*, that (a) The conclusion as to the value reached by the assessors was so unreasonable in the light of circumstances that the property was substantially overvalued and injustice resulted, or (b) that the assessment was in some way fraudulent, dishonest or illegal." (emphasis added)); *Westwood P'ship v. Gogarty*, 103 S.W.3d 152, 161 (Mo.Ct.App.2003) ("There is no longer an automatic presumption regarding the correctness of an assessor's valuation.... The taxpayer in a Commission tax appeal still bears the burden of proof and must show by a *preponderance of the evidence* that the property was improperly classified or valued." (emphasis added) (citations omitted)); *Shoosmith Bros., Inc. v. County of Chesterfield*, 268 Va. 241, 245, 601 S.E.2d 641, 643 (2004) ("We presume that a county's tax assessment is correct, and the burden is on the taxpayer to rebut the presumption by showing by a *clear preponderance of the evidence* that its property is assessed at more than fair market value." (emphasis added)). *Cf. In re FMC Corp. (Peroxygen Chems. Div.) v. Unmack*, 92 N.Y.2d 179, 187–88, 699 N.E.2d 893, 896–97, 677 N.Y.S.2d 269, 272–73 (1998) ("Our analysis begins with the recognition that a property valuation by the tax assessor is presumptively valid .... However, when a petitioner challenging the

assessment comes forward with *'substantial evidence'* to the contrary, the presumption disappears .... The substantial evidence standard is a minimal standard. It requires less than 'clear and convincing evidence' and less than proof by 'a preponderance of the evidence, overwhelming evidence or evidence beyond a reasonable doubt' ...." (emphasis added) (citations omitted)).

21. The requirement of an appraisal and/or expert testimony is not contained in the statute governing taxpayers' appeals of property assessments but is alluded to in Syllabus point 8 of *Killen*. *See* W. Va.Code § 11-3-24. *See also* Syl. pt. 8, *Killen v. Logan County Comm'n*, 170 W.Va. 602, 295 S.E.2d 689 ("An objection to any assessment may be sustained only upon the presentation of competent evidence, *such as that equivalent to testimony of qualified appraisers*, that the property has been under- or over-valued by the tax commissioner and wrongly assessed by the assessor. The objecting party, whether it be the taxpayer, the tax commissioner or another third party, must show by a preponderance of the evidence that the assessment is incorrect." (emphasis added)). At the conclusion of the Board's hearing, several Commissioners conceded that the wording of the Commission's letter did not comply with the governing statutory language and indicated an intention to remedy this infirmity.

22. Employees of an assessor's office are not required to be licensed or certified in order to conduct real estate appraisals. *See supra* note 9.

would be required to submit to prevent them from simply complaining that the tax assessments were too high without any other proof. The Commission concludes its argument by stating that other decisions of this Court have held that the Assessor's valuations are presumed to be correct and will not be overturned absent an abuse of discretion. *Citing Western Pocahontas Props., Ltd. v. County Comm'n of Wetzel County*, 189 W.Va. 322, 431 S.E.2d 661; *In Re: Tax Assessments Against Pocahontas Land Co.*, 172 W.Va. 53, 303 S.E.2d 691; *Killen v. Logan County Comm'n*, 170 W.Va. 602, 295 S.E.2d 689.

On this point, the Foundation complains that the clear and convincing burden of proof it is required to sustain is unconstitutional. However, the Foundation's argument also challenges its corresponding burden of persuasion insofar as it complains that neither the Assessor nor the Commission was required to present evidence of a specific type to prove the correctness of their assessments. Requiring the party bringing a claim for relief to bear the burden of persuasion, however, is consistent with our jurisprudence. "It is a well-established rule of law that in civil actions the party seeking relief must prove his right thereto[.]" *Boury v. Hamm*, 156 W.Va. 44, 52, 190 S.E.2d 13, 18 (1972). Therefore,

> when a plaintiff comes into court in a civil action he must, to justify a verdict in his favor, establish his case .... The burden of proof, meaning the duty to establish the truth of the claim ..., rests upon him from the beginning, and does not shift, as does the duty of presenting all the evidence bearing on the issue as the case progresses.

*Burk v. Huntington Dev. & Gas Co.*, 133 W.Va. 817, 830, 58 S.E.2d 574, 581 (1950), *modified on other grounds*, *Foster v. City of Keyser*, 202 W.Va. 1, 501 S.E.2d 165 (1997). Moreover,

> [a]s a general matter, the burden of proof consists of two components: burden of production and burden of persuasion. The burden of persuasion requires the party upon whom it is placed, to convince the trier of fact ... on a given issue. When a party has the burden of persuasion on an issue, that burden does not shift. The burden of production merely requires a party to present some evidence to rebut evidence proffered by the party having the burden of persuasion. The term burden of production is also used to refer to either party presenting some evidence on a matter.

*Mayhew v. Mayhew*, 205 W.Va. 490, 497 n. 15, 519 S.E.2d 188, 195 n. 15 (1999) (citations omitted). *Cf. id.*, 205 W.Va. at 498 n. 18, 519 S.E.2d at 196 n. 18 ("As a general matter, our cases have permitted the burden of persuasion to shift to the defendant when the defendant alleges an affirmative defense." (citations omitted)).

Thus, as the party seeking relief from the allegedly erroneous tax assessment, the Foundation bears the burden of proving its entitlement to relief. *See Boury*, 156 W.Va. at 52, 190 S.E.2d at 18. To sustain this burden, the Foundation must present clear and convincing evidence. The burden of persuasion rests with the Foundation to prove that its tax assessment was erroneous; it does not lie with the Assessor or the Commission nor does it shift thereto. Therefore, we must determine whether it is constitutional to require an aggrieved taxpayer to prove his/her claim for relief from an erroneous tax assessment by clear and convincing evidence.

When requested to review constitutional challenges to the burden of proof applicable in a given case, the United States Supreme Court has reminded parties that "[i]n every case the *onus probandi* lies on the party who wishes to support his case by a particular fact which lies more peculiarly within his knowledge, or of which he is supposed to be cognizant." *Concrete Pipe*, 508 U.S. at 626, 113 S.Ct. at 2281, 124 L.Ed.2d 539 (internal quotations and citations omitted). Consequently, the Court has admonished that, "[o]utside the criminal law area, where special concerns attend, the locus of the burden of persuasion is normally not an issue of federal constitutional moment." *Lavine v. Milne*, 424 U.S. 577, 585, 96 S.Ct. 1010, 1016, 47 L.Ed.2d 249 (1976) (footnote omitted). That said, the constitutional issue before us is one we have not yet decided. Despite the reluctance of the high Court to decide such matters, we nevertheless will consider the

merits of the parties' arguments insofar as this question is a "controlling issue in the resolution of the case." Syl. pt. 2, in part, *Louk v. Cormier*, 218 W.Va. 81, 622 S.E.2d 788. Absent our own prior precedent to guide our determination of this issue, we will look to decisions from other jurisdictions.

Only three jurisdictions—Illinois, Michigan, and the United States Court of Appeals for the Ninth Circuit–have addressed the constitutionality of a taxpayer's burden of proof in tax assessment cases. Of those courts' decisions, only one involves an assessment of taxes on real property, such as those which are at issue in the case *sub judice*. See *LaGrange State Bank No. 1713 v. DuPage County Bd. of Review*, 79 Ill.App.3d 474, 398 N.E.2d 992, 35 Ill.Dec. 42 (1979). In *LaGrange*, the taxpayer was required to satisfy a clear and convincing burden of proof in challenging its real property tax assessment. The court reviewed numerous evidentiary errors raised by the taxpayer, including the lower tribunal's admission of inadmissible hearsay evidence and the consideration of ex parte evidence, and concluded that the taxpayer had not been denied due process. *Id.*, 79 Ill.App.3d at 481–82, 398 N.E.2d at 998–99, 35 Ill.Dec. at 48–49. Although the court did not specifically find the clear and convincing burden of proof to be constitutional, many of the evidentiary errors raised by the taxpayer therein and decided by the court mirror the arguments voiced by the Foster Foundation in support of its position that the clear and convincing burden of proof is unconstitutional.

In more general terms, two other courts have concluded that placing the burden of proof on the taxpayer is not violative of constitutional protections. The case of *Wilcox v. Commissioner of Internal Revenue*, 848 F.2d 1007 (9th Cir.1988), involved a deficiency in the taxpayer's federal income tax. In *Wilcox*, the court, without specifying the burden of proof the taxpayer was required to satisfy, stated that "placing the burden of proof on the taxpayer does not violate due process." *Id.* at 1008 (citation omitted).

The other case involving the constitutionality of a taxpayer's burden of proof is *City of Troy v. Cleveland Pneumatic Tool Co.*, 109 Mich.App. 361, 311 N.W.2d 782 (1981). Like *Wilcox, Cleveland Pneumatic*, which also involved an assessment levied on the taxpayer's personal property, did not identify the applicable burden of proof. Rather, in clarifying a statute concerning the allocation of the burden of proof in tax appeals cases, the court observed that recent legislative amendments require the appealing party, be it the taxpayer or the taxing authority, to shoulder the burden of proof on appeal. The court ultimately concluded that shifting the burden of proof to the appealing party is constitutional so long as the party who bears the burden of proof has adequate notice of such responsibility. *Id.*, 109 Mich.App. at 371, 311 N.W.2d at 787.

From these authorities, it is apparent that there is no constitutional infirmity to requiring a taxpayer to bear the burden of proof when challenging a tax assessment. However, having gleaned little guidance as to the constitutionality of the clear and convincing burden of proof from these other jurisdictions, we must look to analogous decisions and bodies of law for further counsel.

In this Court's jurisprudence, we have repeatedly applied and upheld the clear and convincing burden of proof in a variety of contexts. See, e.g., Syl. pt. 7, in part, *In re Abbigail Faye B.*, 222 W.Va. 466, 665 S.E.2d 300 (2008) (requiring, at hearing on petition for infant guardianship based upon allegations of child abuse and neglect, "allegations of child abuse and neglect must be proven by *clear and convincing evidence*" (emphasis added)); Syl. pt. 3, in part, *Schmehl v. Helton*, 222 W.Va. 98, 662 S.E.2d 697 ("The burden is on the person seeking to avoid ... [personal] liability [for unpaid and unremitted sales taxes] to show with *clear and convincing evidence*, giving due deference to the statute's general authorization for the imposition of such liability, that it would be fundamentally unfair and an arbitrary and capricious or unreasonable act to impose such liability." (emphasis added)); Syl. pt. 5, *Smith v. Smith*, 219 W.Va. 619, 639 S.E.2d 711 (2006) ("To justify the reformation of a clear and unambiguous deed for mistake, the mistake must be one of fact, not of law; the mistake must be mutual and common to both

parties to the deed; the unambiguous deed must fail to express the obvious intention of the parties; and the mutual mistake must be proved by strong, *clear and convincing evidence*." (emphasis added)); *McConaha v. Rust*, 219 W.Va. 112, 119, 632 S.E.2d 52, 59 (2006) (noting that party seeking to challenge settlement agreement reached in partition proceeding "must allege and prove by *clear and convincing evidence* that an accident, mistake or fraud occurred" (emphasis added) (citation omitted)); Syl. pt. 2, in part, *State ex rel. Suriano v. Gaughan*, 198 W.Va. 339, 480 S.E.2d 548 (1996) ("Plaintiffs who are public officials or public figures must prove by *clear and convincing evidence* that the defendants made their defamatory statement with knowledge that it was false or with reckless disregard of whether it was false or not." (emphasis added)); Syl. pt. 1, in part, *Lawyer Disciplinary Bd. v. McGraw*, 194 W.Va. 788, 461 S.E.2d 850 (1995) ("Rule 3.7 of the Rules of Lawyer Disciplinary Procedure . . . requires the Office of Disciplinary Counsel to prove the allegations of the formal charge [of lawyer misconduct] by *clear and convincing evidence*." (emphasis added)); Syl. pt. 3, in part, *Shamblin v. Nationwide Mut. Ins. Co.*, 183 W.Va. 585, 396 S.E.2d 766 (1990) ("It will be the insurer's burden to prove by *clear and convincing evidence* that it attempted in good faith to negotiate a settlement[.]" (emphasis added)); Syl. pt. 3, in part, *Everett v. Brown*, 174 W.Va. 35, 321 S.E.2d 685 (1984) (holding that when suit is brought to enforce promise, court should consider "the extent to which the action or forbearance corroborates evidence of the making and terms of the promise, or the making and terms are otherwise established by *clear and convincing evidence*" (emphasis added)); Syl. pt. 1, in part, *In the Interest of S.C.*, 168 W.Va. 366, 284 S.E.2d 867 (1981) ("*W. Va.Code*, 49–6–2(c) [1980], requires the State Department of Welfare [now the Department of Health and Human Resources], in a child abuse or neglect case, to prove 'conditions existing at the time of the filing of the petition . . . by *clear and convincing proof*.'" (emphasis added)); Syl. pt. 1, *Berkeley Dev. Corp. v. Hutzler*, 159 W.Va. 844, 229 S.E.2d 732 (1976) ("The burden of proving an easement rests upon the party claiming such right and must be established by *clear and convincing proof*." (emphasis added)); Syl. pt. 7, in part, *State v. Johnson*, 111 W.Va. 653, 164 S.E. 31 (1932) ("The question as to whether or not a juror has been subjected to improper influence affecting the verdict, is a fact primarily to be determined by the trial judge from the circumstances, which must be *clear and convincing* to require a new trial[.]" (emphasis added)).

We also have determined that it is proper to place the burden of proof on the plaintiff to prove his/her entitlement to relief. Perhaps most analogous to the taxpayer's burden of proof in the case *sub judice* is the burden of proof borne by a plaintiff in a case brought pursuant to the West Virginia Medical Professional Liability Act (hereinafter "the MPLA"), W. Va.Code § 55–7B–1, *et seq.* Under the MPLA, a court may require a plaintiff to provide evidence through expert testimony in support of his/her claim for relief. *See* W. Va.Code § 55–7B–7(a) (2003) (Supp.2008) ("The applicable standard of care and a defendant's failure to meet the standard of care, if at issue, shall be established in medical professional liability cases by the plaintiff by testimony of one or more knowledgeable, competent expert witnesses if required by the court[.]"). *See also* Syl. pt. 5, in part, *Estate of Fout–Iser ex rel. Fout–Iser v. Hahn*, 220 W.Va. 673, 649 S.E.2d 246 (2007) ("When a particular defendant's failure to meet the standard of care is at issue in medical malpractice cases, the sufficiency and nature of proof required is governed by West Virginia Code § 55–7B–7(a) (2003)[.]"); Syl. pt. 8, in part, *McGraw v. St. Joseph's Hosp.*, 200 W.Va. 114, 488 S.E.2d 389 (1997) ("A trial court is vested with discretion under W. Va.Code § 55–7B–7 (1986) to require expert testimony in medical professional liability cases[.]").

This Court has upheld this rather onerous burden because plaintiffs in medical malpractice cases bear the burden of proving their claims. *See, e.g.*, Syl. pt. 4, *Hundley v. Martinez*, 151 W.Va. 977, 158 S.E.2d 159 (1967) ("In an action for damages against a physician for negligence or want of skill in the treatment of an injury or disease, the burden

is on the plaintiff to prove such negligence or want of skill and that it resulted in injury to the plaintiff."); Syl. pt. 1, *Schroeder v. Adkins*, 149 W.Va. 400, 141 S.E.2d 352 (1965) ("In an action for damages against a chiropodist, for negligence and want of skill in the treatment of an injury or disease, the burden is on the plaintiff to prove such negligence or want of skill and that it results in injury to the plaintiff."); Syl. pt. 2, *Roberts v. Gale*, 149 W.Va. 166, 139 S.E.2d 272 (1964) ("It is the general rule that in medical malpractice cases negligence or want of professional skill can be proved only by expert witnesses."); Syl. pt. 2, *White v. Moore*, 134 W.Va. 806, 62 S.E.2d 122 (1950) ("In an action for damages against a physician, for negligence and want of professional skill in the making of an examination, or in the treatment of an injury or disease, the burden is on the plaintiff to prove such negligence or want of skill, resulting in injury to the plaintiff."); Syl. pt. 2, *Dye v. Corbin*, 59 W.Va. 266, 53 S.E. 147 (1906) ("In an action for damages against a physician, for negligence and want of skill in the treatment of an injury or disease, the burden is on the plaintiff to prove such negligence or want of skill, resulting in injury to the plaintiff."), *overruled on other grounds by Pleasants v. Alliance Corp.*, 209 W.Va. 39, 543 S.E.2d 320 (2000).

Requiring plaintiffs in medical malpractice cases to bear the burden of proof is derived from our more general negligence jurisprudence placing the burden of proof on plaintiffs to prove their claims of negligence. *See, e.g.*, Syl. pt. 3, *Keister v. Talbott*, 182 W.Va. 745, 391 S.E.2d 895 (1990) ("Damages arising from the negligence of an attorney are not presumed, and a plaintiff in a malpractice action has the burden of proving both his loss and its causal connection to the attorney's negligence."); Syl. pt. 2, *Walton v. Given*, 158 W.Va. 897, 215 S.E.2d 647 (1975) ("The burden is on the plaintiff to prove by a preponderance of the evidence that the defendant was negligent and that such negligence was the proximate cause of the injury."); Syl. pt. 2, *Smith v. Edward M. Rude Carrier Corp.*, 151 W.Va. 322, 151 S.E.2d 738 (1966) ("The burden is on the plaintiff to establish a prima facie case of negligence against the defendant in order to warrant

jury consideration but such showing may be made by circumstantial as well as direct evidence."). *Cf.* Syl. pt. 6, *Leftwich v. Wesco Corp.*, 146 W.Va. 196, 119 S.E.2d 401 (1961) ("Contributory negligence on the part of the plaintiff is an affirmative defense. There is a presumption of ordinary care in favor of the plaintiff, and where the defendant relies upon contributory negligence, the burden of proof rests upon the defendant to show such negligence unless it is disclosed by the plaintiff's evidence or may be fairly inferred by all of the evidence and circumstances surrounding the case."), *overruled on other grounds by Bradley v. Appalachian Power Co.*, 163 W.Va. 332, 256 S.E.2d 879 (1979).

This placement of the burden of proof also is consistent with the United States Supreme Court's recognition that "[i]n every case the *onus probandi* lies on the party who wishes to support his case by a particular fact which lies more peculiarly within his knowledge, or of which he is supposed to be cognizant." *Concrete Pipe*, 508 U.S. at 626, 113 S.Ct. at 2281, 124 L.Ed.2d 539 (internal quotations and citations omitted).

 Here, the Commission required the Foundation to present " '[c]lear and convincing evidence', which by definition means 'formal appraisals and/or expert testimony by qualified people', to prove that the assessment is in fact erroneous." (Emphasis omitted). Although the provisions of W. Va.Code § 11-3-24 do not specify the precise type of evidence a taxpayer must present to meet its clear and convincing burden, this Court, in *Killen*, suggested the type of evidence required to rebut the presumption of the correctness of the assessor's assessment:

> [a]n objection to any assessment may be sustained only upon the presentation of competent evidence, *such as that equivalent to testimony of qualified appraisers*, that the property has been under- or overvalued by the tax commissioner and wrongly assessed by the assessor.

Syl. pt. 8, in part, *Killen v. Logan County Comm'n*, 170 W.Va. 602, 295 S.E.2d 689 (emphasis added). The Foundation does not claim that it did not have notice of its burden of proof or of the specific type of evidence

required to satisfy this burden; rather, the Foundation argues simply that the clear and convincing burden of proof is unfair. It is not unreasonable or unfair, however, to require the party claiming to have superior knowledge of the value of its own property to shoulder the burden of presenting such evidence to the decision maker. *See Concrete Pipe,* 508 U.S. at 626, 113 S.Ct. at 2281, 124 L.Ed.2d 539. Neither is it a denial of due process to impose more stringent standards upon a complaining taxpayer in an attempt to prevent frivolous tax assessment challenges. *See, e.g.,* Syl. pt. 6, in part, *Hinchman v. Gillette,* 217 W.Va. 378, 618 S.E.2d 387 (2005) (upholding pre-suit requirements of MPLA in recognition of statutory purpose of "preventing the making and filing of frivolous medical malpractice claims and lawsuits"). Accordingly, we hold that requiring a taxpayer challenging a property tax assessment in accordance with W. Va.Code § 11–3–24 (1979) (Repl.Vol.2008) to prove by clear and convincing evidence that the assessor's assessment is erroneous does not violate the constitutional due process protections provided by section one of the Fourteenth Amendment to the United States Constitution or by section ten of Article III of the West Virginia Constitution. Applying this holding to the case *sub judice,* the circuit court did not err by requiring the Foundation to prove by clear and convincing evidence that the Assessor's tax assessment of the Woodlands property was erroneous, and the imposition of this burden of proof did not deprive the Foundation of due process.

### C. *Woodlands' Tax Assessment in Light of § 501(c)(3) Status*

Having determined that there are no constitutional infirmities with the hearing tribunal in which a taxpayer must pursue his/her challenge of a property tax assessment or with the burden of proof by which a taxpayer must prove his/her claim for relief, we now reach the Foundation's final assignment of error contesting the assessed value of its property. Specifically, the Foundation argues that its status as a § 501(c)(3) corporation[23] was not given sufficient consideration in the valuation of its Woodlands property, and, thus, the resulting assessment was erroneous. In its order disposing of the Foundation's appeal, the circuit court acknowledged the Foundation's § 501(c)(3) status, but did not specifically refer to it in its consideration or decision of the case, ruling simply that "the Plaintiff [the Foundation] failed to prove by clear and convincing evidence that the Assessor erroneously valued its property."

Before reaching the merits of the parties' arguments, it is instructive to our decision of this issue to briefly review the manner by which property is assessed for taxation purposes. Tax assessments of property are required to be proportionate to the property's value: "[A]ll property, both real and personal, shall be taxed in proportion to its value to be ascertained as directed by law." W. Va. Const. art. X, § 1. W. Va.Code § 11–3–1 (1977) (Repl.Vol.2008) further instructs that "[a]ll property shall be assessed annually . . . at its true and actual value." We have interpreted the term "value" with respect to tax assessments as meaning " 'worth in money' of a piece of property—its market value." Syl. pt. 3, in part, *Killen v. Logan County Comm'n,* 170 W.Va. 602, 295 S.E.2d 689. Furthermore, we have held that "[t]he price paid for property in an arm's length transaction, while not conclusive, is relevant evidence of its true and actual value." Syl. pt. 2, in part, *Kline v. McCloud,* 174 W.Va. 369, 326 S.E.2d 715 (1984).

██ Once an assessor has made an assessment, the valuation placed upon the property by the assessor is accorded great deference and is presumed to be correct. "As a general rule, there is a presumption that valuations for taxation purposes fixed by an assessor are correct. . . . The burden is on the taxpayer challenging the assessment to demonstrate by clear and convincing evidence that the tax assessment is erroneous." Syl. pt. 2, in part, *Western Pocahontas Props., Ltd. v. County Comm'n of Wetzel County,* 189 W.Va. 322, 431 S.E.2d 661. *Accord* Syl. pt. 7, *In re Tax Assessments Against Pocahontas Land Co.,* 172 W.Va. 53, 303 S.E.2d 691 ("It is a general rule that valuations for taxation purposes fixed by an

23. *See note 2, supra.*

assessing officer are presumed to be correct. The burden of showing an assessment to be erroneous is, of course, upon the taxpayer, and proof of such fact must be clear."). *Cf.* Syl. pt. 2, *In re Tax Assessments Against the S. Land Co.*, 143 W.Va. 152, 100 S.E.2d 555 (1957) ("In a case involving the assessment of property for taxation purposes, which does not involve the violation of a statute governing the assessment of property, or a violation of a constitutional provision, or in which a question of the constitutionality of a statute is not involved, this Court will not set aside or disturb an assessment made by an assessor or the county court, acting as a board of equalization and review, where the assessment is supported by substantial evidence."), *overruled on other grounds by In re the Assessment of Shares of Stock of the Kanawha Valley Bank*, 144 W.Va. 346, 109 S.E.2d 649 (1959).

On appeal to this Court, the Foster Foundation seeks to overcome this presumption of the correctness of the assessment of its Woodlands property. During the proceedings below, the Assessor first valued the Woodlands property at $38,137,300.00. The Assessor then corrected that valuation and issued a new assessment valuing the Woodlands at $31,190,000.00. Following proceedings before the Board, the assessment was reduced again to $29,759,000.00. Nevertheless, the Foundation claims that the property's actual value is only $14,900,000.00. In support of this figure, the Foster Foundation argues that neither the Board nor the circuit court properly considered the Woodlands' status as a § 501(c)(3) nonprofit corporation, and, as a result, the assessed value was incorrect.[24] The Foundation explains that, because the Woodlands provides lifetime care for its residents regardless of their ability to pay,[25] any potential purchaser of the Woodlands would likewise be obligated to provide such lifetime care for the Woodlands' current 300 residents. Given this potentially substantial burden, the Foundation contends that the Woodlands property is much less appealing than if it did not have this obligation. Thus, the Foundation argues that the various assessments of the Woodlands property[26] have not properly accounted for the diminished value of the Woodlands in light of such restriction. The Foundation additionally argues that, as a not-for-profit entity, the Woodlands has constructed improvements to its facility without regard as to whether it could recoup the cost thereof upon the sale of its property; however, argues the Foundation, this factor was not considered in arriving at the Woodlands' assessed value. Finally, during the oral presentation of this case, the Foundation suggested additionally that, because the Woodlands is obligated to provide lifetime care for its residents regardless of their ability to pay, the residents essentially hold "life estates"[27] in their Woodlands residences.

The County Commission disputes the Foundation's assertions that the status of the Woodlands as a § 501(c)(3) entity and its obligation to provide lifelong care for its residents negatively affect the property's marketability. Rather, the Commission suggests that only one resident in the Woodlands' history has become unable to pay, and that there exists a waiting list of approximately 470 people who are interested in living at the Woodlands.

█ Although the Assessor's assessment of the Woodlands' property is presumed to be correct, it twice has been corrected in this case—once by the Assessor, himself, and once by the Board following its hearing on the Foundation's challenge. Here, the Foundation asks that we reduce the assessment further in light of its § 501(c)(3) status, but, in order to prevail, the Foundation must present clear and convincing evidence that the assessment is erroneous. Upon a review

---

24. Although the Foundation phrases this assignment of error in terms of a denial of due process, it is actually a simple challenge regarding the assessed value of the property.

25. *See supra* note 4.

26. The Foundation references various commentary from the February 9, 2007, Board hearing which considered the Woodlands' construction costs and amount of replacement value fire insurance in arriving at an assessed value for the property.

27. *See* note 29, *infra.*

of the record in this case, we conclude that the Foundation has not sustained its burden of proof.

We previously have counseled that, "[i]n all cases, it is incumbent upon the circuit court, as it is upon the county commission and the assessor, to set the assessed value of all parcels of land at the amount established by the State Tax Commissioner. W. Va.Code § 18–9A–11." Syl. pt. 5, *Tug Valley Recovery Ctr. v. Mingo County Comm'n*, 164 W.Va. 94, 261 S.E.2d 165 (1979). In turn,

> Title 110, Series 1P of the West Virginia Code of State Rules confers upon the State Tax Commissioner discretion in choosing and applying the most accurate method of appraising commercial and industrial properties. The exercise of such discretion will not be disturbed upon judicial review absent a showing of abuse of discretion.

Syl. pt. 5, *In re Tax Assessment Against Am. Bituminous Power Partners, L.P.*, 208 W.Va. 250, 539 S.E.2d 757 (2000). Pursuant to W. Va.C.S.R. § 110–1P–2 (1991), factors that shall be considered in the appraisal of commercial property for ad valorem property tax purposes include:

> The location of such property;
>
> Its site characteristics;
>
> The ease of alienation thereof, considering the state of its title, the number of owners thereof, and the extent to which the same may be the subject of either dominant or servient easements;
>
> The quantity of size of the property and the impact which its sale may have upon the surrounding properties;
>
> If purchased within the previous eight years, the purchase price thereof and the date of each such purchase;
>
> Recent sale of, or other transactions involving, comparable property;
>
> The value of such property to its owner;
>
> The condition of such property;

> The income, if any, which the property actually produces and has produced within the next preceding three (3) years; and
>
> Any commonly accepted method of ascertaining the market value of any such property, including techniques and method peculiar to any particular species of property if such technique or method is used uniformly and applied to all property of like species.

W. Va.C.S.R. §§ 110–1P–2.1.1.1—110–1P–2.1.1.10. Improvements to and on the land also are to be considered, W. Va.C.S.R. § 110–1P–2.1.2,[28] as well as additional factors.

> In addition to improvements, other important considerations affecting the value of land . . . are:
>
> Location,
>
> Size,
>
> Shape,
>
> Topography,
>
> Accessibility,
>
> Present use,
>
> Highest and best use,
>
> Easements,
>
> Zoning,
>
> Availability of utility,
>
> Income imputed to land and
>
> Supply and demand for land of a particular type.

W. Va.C.S.R. §§ 110–1P–2.1.3—110–1P–2.1.3.12. Finally, "[e]ach of these factors should be considered in the appraisal of a specific parcel. Some, however, may be given more weight than others." W. Va.C.S.R. § 110–1P–2.1.4.

■ While these criteria do not specifically reference a taxpayer's status as a § 501(c)(3) corporation as a factor to consider in appraising commercial property, these lists do contain many factors that would take

---

**28.** W. Va.C.S.R. § 110–1P–2.1.2 (1991) directs

> There are two (2) types of improvements which are considered in the appraisal process; these are improvements to the land and improvements on the land.
>
> Improvements to the land are land improvements, the value of which are included in the value of land. Some examples of these im-

provements include privately owned drainage systems, driveways, walks, etc.

> Improvements on the land are buildings and structures. They are valued separate and apart from the land.

*Id.* at §§ 110–1P–2.1.2, 110–1P–2.1.2.1, 110–1P–2.1.2.2.

into account this unique status of the Woodlands property. For example, the Foundation contends that the particular manner in which it uses its property as a lifetime care retirement facility has not been adequately considered; according to W. Va.C.S.R. § 110–1P–2.1.3.6, though, a commercial property's "[p]resent use" is a factor to consider in its appraisal for purposes of taxation.

The Foundation additionally argues that no consideration was given to the fact that, because it provides lifetime care for its residents, the property is encumbered by these "life estates"[29] such that a future purchaser likewise would be required to provide lifetime care for the Woodlands' residents. Again, however, such a consideration is one of the enumerated factors to consider in rendering a tax appraisal of commercial property: "[t]he ease of alienation thereof, considering the state of its title [and] the number of owners thereof." W. Va.C.S.R. § 110–1P–2.1.1.3.

Lastly, the Foundation contends that because it is a not-for-profit corporation, it may have incurred construction costs that cannot be recouped if the property is sold because the cost of such improvements allegedly was greater than their market value and that this factor should have been considered in reaching its assessed value. The appraisal criteria take into account, however, "[t]he value of such property to its owner," W. Va.C.S.R. § 110–1P–2.1.1.7, suggesting that a particular parcel of property may be valued at one amount by its owner while it may be valued differently by persons other than its owner. Moreover, to the extent that the value of the Foundation's improvements to the Woodlands property have been diminished by depreciation, this factor also is required to be considered in appraising commercial property. *See* W. Va.C.S.R. § 110–1P–2.2.1.1 ("To determine fair market value under th[e cost] approach, replacement cost of the improvements is reduced by the amount of accrued

depreciation and added to an estimated land value. In applying the cost approach, the Tax Commissioner will consider three (3) types of depreciation: physical deterioration, functional obsolescence, and economic obsolescence."). Thus, these factors, too, were all within the ambit of criteria required to be considered in appraising commercial property for the purpose of taxation.

Having considered each of the arguments advanced by the Foster Foundation, we conclude that the Foundation has not sustained its burden of proving by clear and convincing evidence that its status as a § 501(c)(3) corporation was not adequately considered in assessing taxes on its Woodlands property. Each of the unique characteristics of the Woodlands was among the numerous factors required to be considered in rendering a tax appraisal of commercial property. Therefore, we affirm the circuit court's ruling upholding the Board's assessment of the Woodlands property in the amount of $29,759,000.00 for the 2007 tax year.

## IV.

## CONCLUSION

For the foregoing reasons, the September 6, 2007, order of the Circuit Court of Cabell County is hereby affirmed.

Affirmed.

Justice ALBRIGHT not participating.

Senior Status Justice McHUGH, sitting by temporary assignment.

Senior Status Justice McHUGH disqualified.

Judge BEANE, sitting by temporary assignment.

Justice BENJAMIN dissents and reserves the right to file a dissenting opinion.

**29.** We use the word "life estate" here because that is the terminology used by the Foundation in its argument before this Court. However, we believe this term to be a misnomer in this case because, typically, a life tenant in possession, not a remainderman, pays the property taxes due and owing on his/her interest in the property. *See* W. Va.Code § 11–4–3(a)(1) (2007) (Repl.Vol.

2008) (defining "owner," for purposes of assessment of real property, as "the person ... who is possessed of the freehold, whether in fee or for life"). Thus, if the residents of the Woodlands actually held life estates in their Woodlands residences, they, and not the Foster Foundation, would be responsible for paying the taxes at issue herein.

BENJAMIN, J., dissenting.

(Filed Jan. 9, 2009)

This case presents, among other issues, what the proper burden of proof should be for a taxpayer who challenges an assessor's tax assessment. More specifically, we have prior decisions of this Court which are inconsistent and conflicting with respect to whether the taxpayer must meet a "preponderancy of the evidence" burden, or whether the taxpayer must meet the more difficult "clear and convincing" burden of proof in order to prevail. I applaud my colleagues for resolving this conflict, but respectfully dissent to Syllabus Points 5 and 6 of the majority opinion to the extent that the taxpayer is required to meet a "clear and convincing" burden of proof when challenging assessments. I believe the proper burden of proof should be a "preponderancy of evidence" as it is in other valuation-type disputes within our judicial system.

As correctly noted by the majority opinion, the West Virginia Legislature has not established what should be the proper burden of proof for a case such as this involving a taxpayer's challenge to a tax assessment. That is unfortunate because it requires this Court to do so.

The majority opinion lists our prior cases which have touched on the burden of proof issue. While I appreciate that a decision in favor of one standard or the other is needed to resolve the issue of inconsistency in our prior decisions, I am unpersuaded by the majority's rationale for its adoption of the "clear and convincing" standard. In essence, the only rationale in the majority opinion which appears to be advanced to charge a citizen taxpayer with a higher burden is that there is a presumption that valuations of property for purposes of taxation are presumed to be correct. Op., at 26, 672 S.E.2d at 161. *See Western Pocahontas Props. v. County Comm'n of Wetzel Co.*, 189 W.Va. 322, 431 S.E.2d 661 (1993). I fail to see why such a presumption compels a burden of proof on a taxpayer which is onerous and which is much more difficult to meet than that which applies to the State.

In reviewing other jurisdictions, I observe that the same inconsistency which was heretofore present in our jurisprudence is present among the other states. Nevertheless, a pattern emerges that state legislatures are more likely than courts to use the preponderancy burden. *See* Arizona Rev. Stat. Ann. § 42–1255 (2004); *Aileen H. Char Life Interest v. Maricopa County*, 208 Ariz. 286, 93 P.3d 486, 491 (2004); Cal. Rev. & Tax.Code §§ 51.5(e), 110(b), 5170; *Paine v. State Board of Equalization*, 137 Cal.App.3d 438, 442, 187 Cal.Rptr. 47, 49 (1982); Florida Statutes, § 194.301; *Smith v. Royal & Sons, Ltd.*, 801 So.2d 255, 257–8 (Fla.Ct.App.2001) (per curiam); Idaho Session Law 63–511 (1985); Iowa Code § 429.2 (2006); *Post–Newsweek Cable, Inc. v. Board of Review of Woodbury County*, 497 N.W.2d 810, 813 (Iowa 1993); Kansas S.A.2003 Supp 79–2005(I); *Saline County Board of Commissioners v. Jensen*, 32 Kan.App.2d 730, 88 P.3d 242, 244–45 (2004); *In re Colorado Interstate Gas Co.*, 276 Kan. 672, 79 P.3d 770 (2003); Ky.Rev.Stat. Ann. § 13B.090 (1996); *U Haul Real Estate Co. v. County of Dakota*, 2008 WL 650290 (Minn.Tax.Ct. March 7, 2008); *Southern Minnesota Beet Sugar Coop v. County of Renville*, 737 N.W.2d 545 (Minn. 2007); *In re Walsh (New Hampshire Board of Tax and Land Appeals)*, 156 N.H.347, 934 A.2d 528, 532 (2007); *Porter v. Town of Sanbornton*, 150 N.H. 363, 840 A.2d 778, 783 (2003); Okla. Stat. tit. 68 § 221 (2002); *Estate of Sieber v. Oklahoma Tax Comm'n*, 41 P.3d 1038, 1041–42 (Okla.Civ.App.2001); O.R.S. § 305.427 (Oregon 2005); R.I. Gen. Laws § 8–8–28 (1984); Tex. [Tax] Code Ann. §§ 41.43 and 42.43 (2007); *Mills v. Board of County Commissioners of Burleigh County*, 305 N.W.2d 832, 833–34 (N.D.1981); *Board of Assessment Appeals v. Sampson*, 105 P.3d 198, 204 (Colo.2005); OCGA § 48–5–41(Ga.); *Lamad Ministries, Inc. v. Dougherty County Bd. of Tax Assessors*, 268 Ga.App. 798, 602 S.E.2d 845, 849 (2004); Miss.Code § 27–77–7(4) (2006); Utah Code Ann. § 59–1–604 (1992); and *West Creek Associates, LLC v. County of Goochland*, 276 Va. 393, 665 S.E.2d 834, 842–43 (2008). States which use a "clear and convincing" or more stringent standard seem generally to do so by court decision. *See City of Pinson v. Utilities Board of Oneonta*, 986 So.2d 367, 370 (Ala.

**38**

2007); *Arkansas Beverage Co. v. Heath,* 257 Ark. 991, 521 S.W.2d 835, 836–37 (1975); *Leonard v. Comm'r of Revenue Services,* 264 Conn. 286, 823 A.2d 1184 (2003); *Leader-Treks, Inc. v. Dept. of Revenue,* 385 Ill. App.3d 442, 324 Ill.Dec. 188, 895 N.E.2d 683 (2008); *Gannet Company, Inc. v. State Tax Assessor,* 959 A.2d 741 (Maine 2008); *Brenner v. Banner County Board of Equalization,* 276 Neb. 275, 753 N.W.2d 802, 813 (2008); *SER Board of Equalization v. Barta,* 124 Nev. 58, 188 P.3d 1092, 1097–98 (2008); *Edmondson Mgmt. Serv. Inc. v. Woods,* 603 S.W.2d 716, 717 (Tenn.1980); and *Washington Beef, Inc. v. County of Yakima,* 143 Wash.App. 165, 177 P.3d 162, 167 (2008).

It may be observed that burdens of proof lack general uniformity, even within states. Indeed, it is not unusual for a given state to have a lesser burden for one issue, such as assessments, and a more stringent burden for another issue, such as exemptions. *See generally McDonnell Douglas Corp. v. Franchise Tax Board,* 69 Cal.2d 506, 72 Cal.Rptr. 465, 446 P.2d 313, 316 (1968); *Lamad Ministries,* at 849; *North Alamo Water Supply Corp. v. Willacy County Appraisal District,* 804 S.W.2d 894, 899 (Tex.1991). Here, we have a taxpayer simply challenging an assessment. Such a challenge is governed mainly by expert opinions. Absent a compelling reason to hold the taxpayer citizen to a stiffer burden than the State, I believe that the proper burden, consistent with expert disputes in civil cases, is that the taxpayer must prove his or her case by a "preponderancy of the evidence." To the extent that policy considerations may dictate more stringent burdens in tax matters, I believe that is a matter which should be left to the Legislature. Absent such legislative action, there should be no disparity in burdens between the State and its citizens in matters such as this.

Accordingly, I respectfully dissent.