**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**


*In re* **C.M., A.M., and N.M.**

**No. 21-0552** (Braxton County 19-JA-68, 19-JA-69, and 19-JA-70)


**MEMORANDUM DECISION**


Petitioner Father D.M. Jr., by counsel Andrew C. Shaffer, appeals the Circuit Court of Braxton County's June 10, 2021, order terminating his parental rights to C.M., and any rights he had as stepfather to A.M. and N.M.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Mindy M. Parsley, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Mary Elizabeth Snead, filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating his parental rights when (1) he substantially complied with his improvement period, (2) he was not provided with family counseling, and (3) the DHHR poorly managed the case.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In October of 2019, the DHHR filed a child abuse and neglect petition against the mother, petitioner, and B.M.[2] after then-three-year-old C.M. was found wandering near a busy road wearing only a diaper in low temperatures. Law enforcement officers responded to the home and spoke with petitioner, who was intoxicated while caring for the children. Petitioner was arrested for child neglect creating substantial risk of serious bodily injury or death, and a warrant for the

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]B.M. is the father of A.M. and N.M. Petitioner D.M. Jr. is C.M.'s father and was married to petitioner at the time of the petition's filing.

1

mother was issued because she left the children in petitioner's care while he was intoxicated. Petitioner submitted to a drug screen that same day and tested positive for THC, alcohol, and nonprescribed opioids. Petitioner also admitted to engaging in domestic violence in the home. The DHHR alleged that Child Protective Services ("CPS") workers interviewed then-seven-year-old A.M. and then-eleven-year-old N.M., both of whom reported that they lacked food in the home and that the home was in poor condition. The DHHR further alleged that, the following day, a CPS worker responded to petitioner's home and found it to be in such deplorable condition that he made a referral to the Braxton County Health Department. Lastly, the DHHR alleged that petitioner had previously voluntarily relinquished his parental rights to an older child as a result of abuse and neglect proceedings against him.

Petitioner appeared at the preliminary hearing and waived his right to contest the evidence. He tested positive for tetrahydrocannabinol, ("THC"), benzodiazepines, and alcohol following the hearing. Around November of 2019, the DHHR filed an amended petition that added petitioner's positive drug screen following the preliminary hearing, as well as three other drug screens submitted in November of 2019, which were positive for alcohol, benzodiazepines, and THC. In December of 2019, the circuit court held an adjudicatory hearing wherein petitioner stipulated to the allegations of abuse and neglect. The circuit court accepted petitioner's stipulation and adjudicated him as an abusing and neglecting parent.

In January of 2020, the guardian filed a report expressing astonishment that "it took this long for . . . actions to be taken regarding this family" after interviewing the children. The guardian reported that the children had observed extensive domestic violence between petitioner and the mother. Both A.M. and N.M. reported that petitioner had hit them on numerous occasions while he was under the influence of drugs or alcohol and caused A.M.'s nose to bleed on at least one occasion. The children further reported being locked in their bedroom and being forced to urinate in a bucket. The children also observed drug abuse and reported finding needles and burnt aluminum foil in the home. The guardian noted that the children desired to be returned to their mother's care only if she would separate from petitioner. At a hearing held later that month, the DHHR presented the testimony of a CPS worker, who recommended that petitioner be granted an improvement period. Following testimony, the circuit court took a brief recess and ordered petitioner and the mother to submit to a drug screen, at which time petitioner tested positive for alcohol. The circuit court held petitioner in contempt and continued the hearing.

At the reconvened hearing held in February of 2020, a CPS worker again testified that the DHHR recommended petitioner be granted an improvement period. The CPS worker acknowledged that petitioner was not receiving visits based upon his continued positive alcohol and/or drug screens but recommended that visits be reinstated should petitioner produce negative screens. Petitioner testified that he would comply with the terms and conditions of an improvement period. Petitioner admitted that he was living in an unsuitable home and that he was an alcoholic but denied being addicted to controlled substances. Petitioner stated that he was willing to go to treatment for his alcoholism and requested visits with the children.

Following testimony, the circuit court granted petitioner an improvement period, the terms and conditions of which required that petitioner remain drug and alcohol free, complete inpatient drug treatment, submit to drug screens, obtain and maintain employment, obtain and maintain

suitable housing, undergo a psychological evaluation, complete any required classes, and participate in supervised visitation with the child.[3]

The guardian filed a second report in October of 2020, wherein she noted that the children did not want to visit with petitioner. The guardian further noted that the children "continued to disclose additional abuse the longer they have been removed" and expressed their desire to be adopted by their foster parents. Specifically, the children reported being forced by petitioner and the mother to drink alcohol and smoke cigarettes, experiencing extreme hunger such that they resorted to eating paper, and experiencing sexual abuse by petitioner's brother. The guardian noted that petitioner left inpatient drug treatment against medical advice without immediately informing the DHHR and was found in the mother's room at her sober living facility, despite his and the mother's statements that they were separating due to the children's desires that the mother separate from petitioner. Based on the foregoing, the guardian recommended termination of petitioner's parental rights.

The circuit court held two final dispositional hearings in December of 2020 and February of 2021. The DHHR presented the testimony of Candice Gabriel, a licensed forensic interviewer at Children's Listening Place, who interviewed the children. Ms. Gabriel reported that C.M.'s age and limited verbal skills made it difficult for him to communicate effectively; however, N.M. and A.M. made consistent disclosures regarding the domestic violence and drug abuse in the home, the poor home conditions, and the lack of food in the home. Ms. Gabriel also testified that N.M. and A.M. made disclosures consistent with their disclosures to the guardian, including that petitioner and the mother forced them to drink alcohol and smoke cigarettes and that they were sexually abused by petitioner's brother. Both children also reported being so hungry that they resorted to eating paper. Ms. Gabriel concluded that N.M. and A.M. were extremely fearful of petitioner and the mother, and that in her professional opinion, the children exhibited no signs of being coached to make their disclosures.

The DHHR also presented the testimony of Jenna McCoy, a licensed psychologist at Saar Psychological Group. Ms. McCoy testified that she performed the children's psychological evaluations during which they disclosed drug abuse, domestic violence, extremely poor home conditions, and lack of food. Ms. McCoy's testimony was consistent with the testimony of Ms. Gabriel. A.M. further reported to Ms. McCoy that petitioner was physically abusive towards her and that on one occasion he used a garden hose with metal ends to hit her. A.M. reported that, on another occasion, petitioner hit her so hard with a hairbrush that it broke and bloodied her nose. Both N.M. and A.M. informed Ms. McCoy that they did not want to be placed back into petitioner's care, and Ms. McCoy testified that it was imperative the children receive extensive mental health treatment to learn the necessary skills to cope with the immense amount of trauma they had endured. Ms. McCoy opined that she did not believe contact between the children and petitioner was in the children's best interest.

Joshua Jones, a licensed psychologist with Saar Psychological Group, testified regarding the psychological evaluation he performed on petitioner. Mr. Jones testified that petitioner's

---

[3]Petitioner was not granted visits with his stepchildren, A.M. and N.M., as they reported being afraid of him and did not want to visit with him.

assessment indicated a low motivation for treatment and a tendency to present himself in a favorable light. According to Mr. Jones, petitioner exhibited intense problems with anger control, environmental stressors, and antisocial behavior. Petitioner also displayed personality traits indicative of those who are distant in personal relationships, impatient, easily irritated, quick tempered, and easily provoked by the actions of those around them. Mr. Jones stated that petitioner admitted to drinking alcohol but refused to take any responsibility for his actions. Petitioner acknowledged his criminal history and substance abuse but minimized the seriousness of C.M. being found wandering near a busy road in cold temperatures while wearing only a diaper. Petitioner further minimized the extent of the domestic violence in the home, the home's deplorable condition, and the inadequate food in the home. Petitioner blamed C.M. for going outside alone, blamed the children for being hungry because they would only ask for "junk food," blamed the poor condition of his home on law enforcement tearing it up, and blamed the foster parents for the children's additional disclosures and their refusal to visit with him. Mr. Jones opined that any period of sobriety exhibited by petitioner during the case was, at best, solely for the purpose of satisfying the requirements of the DHHR or the circuit court. Mr. Jones concluded that petitioner has an extremely poor prognosis for attaining minimally adequate parenting and that there were no services or interventions that would assist petitioner in correcting his parenting deficiencies. Most importantly, he opined that the children would be at risk of continued abuse and neglect if returned to petitioner's care.

A service provider testified regarding petitioner's supervised visits with C.M. The service provider stated that, on one occasion in April of 2020, petitioner and C.M. were attending a virtual visit when the child hung up on petitioner. Petitioner proceeded to call the child back and curse at the child. At a subsequent virtual visit, C.M. ran and hid, refusing to participate. About that time, C.M. began having nightmares and developed a fear of the telephone. The provider testified that, although petitioner initially participated well in virtual visits, as the proceedings went on, petitioner digressed and became increasingly irritated during visits.

A CPS worker testified that petitioner, over time, entered four different rehabilitation programs in various parts of West Virginia. Altogether, petitioner was in treatment from February of 2020 through June of 2020. While petitioner completed some treatment, he failed to submit to drug screens as requested, having submitted to only two screens between November of 2020 and January of 2021. The CPS worker further testified that petitioner failed to maintain contact with the DHHR and failed to complete parenting and adult life skills classes.

Petitioner testified that he completed and/or participated in parenting and adult life skills classes, domestic violence counseling, Narcotics Anonymous and Alcoholics Anonymous meetings, long-term inpatient substance abuse treatment, and claimed that he signed a release at every facility and with every provider so that the DHHR could obtain his records. However, petitioner admitted that he did not have any documentation to support his claims. On cross-examination, petitioner was able to produce some documentation that he completed two substance abuse treatment programs; however, the documentation did not indicate whether any drug screens submitted through those programs were under direct observation—a strict requirement for all drug testing to be submitted to the circuit court. Petitioner testified that, after his release from his most recent treatment program, he obtained suitable housing. Petitioner admitted to putting the mother's address as his home address on medical documentation because it was the only address he could

remember but denied residing with the mother. In fact, petitioner claimed that he had never been to that address, claiming he learned of the address "through friends." Petitioner also claimed that he obtained employment in January of 2021 but was laid off before the end of that month and had not been rehired. Petitioner noted that his related child neglect criminal charge had been reduced by plea agreement to the misdemeanor offense of child neglect and that he was sentenced to six months of home incarceration. Lastly, petitioner admitted that he failed to maintain regular contact with the DHHR but stated that he tried to contact "somebody" there around June of 2020, asserting that he had left messages for his caseworker but was unable to supply dates for those attempts.

Lastly, the most current CPS caseworker testified that he had been assigned to petitioner's case for approximately three weeks and had been able to briefly review the history of the case. Based on the testimony provided, the current caseworker opined that the DHHR's recommendation of termination of petitioner's parental rights was appropriate.

By order entered on June 10, 2021, the circuit court terminated petitioner's parental rights, finding that any less-restrictive dispositional alternative was "wholly inappropriate" given that petitioner failed to substantially comply with the terms and conditions of his improvement period. The circuit court further found that petitioner failed to complete long-term inpatient drug treatment. While the evidence showed that petitioner attended various substance abuse treatment facilities throughout West Virginia, the circuit court found the same to be "a calculated effort by [petitioner] to project himself in a positive light hoping the [circuit c]ourt will view the amalgamation of his attendance at these various programs [as] compliance" with his improvement period. However, the circuit court did not view petitioner's attendance of these programs as compliance, instead finding it to be "an act of subterfuge designed to dodge any commitment to addressing his serious substance abuse issue," as well as "a deliberate attempt to evade facing his parenting deficiencies through . . . services." Further, the circuit court found petitioner's testimony, that he completed the Mid-Ohio Valley Fellowship Home program for substance abuse to be incredible, as the documentation provided by petitioner simply stated that, as of the date of the letter, petitioner was compliant with services and on track for graduation but did not state that he successfully completed the program. The letter also failed to set forth any parameters of the program or detail any treatment. Additionally, the letter detailing petitioner's completion of a treatment program in Wheeling indicated that the program was less than three months in length, and considerably shorter than the six-month program required by the circuit court.

The circuit court also noted that petitioner failed to participate in parenting and adult life skills classes. The court noted that service providers attempted to reach petitioner to set up services, but petitioner did not answer their calls or return their messages. Petitioner also failed to complete domestic violence counseling, obtain suitable housing, or consistently submit to drug and alcohol screening. Moreover, the circuit court found that, despite his proclaimed completion of substance abuse treatment, petitioner tested positive for alcohol, methamphetamine, and amphetamine following the final dispositional hearing.

In addition to considering petitioner's failure to complete his improvement period, the circuit court considered petitioner's psychological evaluation report, which indicated that he failed to accept responsibility for his actions, minimized the conditions of abuse and neglect, and blamed the children for the problems in the home. The circuit court found that, according to the report,

5

petitioner lacked the motivation to address the conditions of abuse and neglect and received an extremely poor prognosis. Even more troubling to the circuit court were the children's psychological evaluations and forensic interviews. The court found that the children's disclosures were consistent and credible, and it was significant that C.M. refused to visit with petitioner. The circuit court was "firmly convinced" that the children endured significant abuse and neglect over a long period of time prior to the petition's filing. The circuit court noted it was "readily apparent" that the children had an innate fear of petitioner and that the mother was well aware of that fear but "chooses to blatantly disregard the emotional well-being of her children in order to maintain her amorous relationship with" petitioner.

Lastly, the circuit court found petitioner's arguments regarding a lack of family counseling unavailing. While the MDT discussed the possibility of family counseling, at no time did petitioner or his counsel file a motion with the circuit court requesting family counseling. Moreover, the circuit court found petitioner's arguments in this regard "to be yet another artifice attempting to divert attention away from [petitioner's] dearth compliance throughout this case." Given the foregoing, the circuit court concluded that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination was necessary for the children's welfare. Petitioner appeals the circuit court's June 10, 2021, dispositional order.[4]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating his parental rights when he substantially complied with his improvement period. According to petitioner, the DHHR had the duty to prove by clear and convincing evidence that there was no less-restrictive alternative to the termination of his parental rights but that the DHHR attempted to prove his noncompliance with services by simply not obtaining the documentation for those services and insinuating that it was petitioner's responsibility to present documentation of his compliance. Petitioner notes that

---

[4]The mother's parental rights were terminated below. The father of N.M. and A.M. voluntarily relinquished his parental rights. All three children were placed in a foster home, and the permanency plan is adoption by that foster family.

he signed releases so that the DHHR could obtain any documentation it needed and that, while he could have provided this documentation, "it has always been the standard within this judicial circuit and region of the WVDHHR that upon executed releases by respondents, the WVDHHR would obtain and disclose all related records in these matters." As such, petitioner contends that the record developed at the dispositional hearing, including his own testimony, established that he substantially complied with his improvement period and that the circuit court erred in finding to the contrary.

Petitioner further argues that the circuit court erred in terminating his parental rights without first ordering family counseling. Petitioner asserts that he requested family counseling and that the DHHR expressed its willingness to set up that service at a subsequent multidisciplinary team meeting. However, after the CPS worker who had been handling the matter was suddenly replaced, the "new regime" refused to implement family counseling. Petitioner argues that he cannot understand why family counseling was not implemented in his case given its noninvasive, controlled nature. Petitioner avers that family counseling would have provided the children and petitioner an opportunity to demonstrate their feelings to one another and could have bolstered the DHHR's position to terminate petitioner's parental rights if it had provided the service. However, he asserts, the DHHR's failure to implement this service robbed both the children and petitioner of the opportunity of reunification, "especially considering petitioner had become sober after participating in his inpatient substance abuse treatment."

Lastly, petitioner argues that the circuit court erred in terminating his parental rights when the DHHR failed to properly manage the case. Petitioner cites to the testimony of the last CPS worker assigned to the case, noting that the worker had "virtually no working knowledge of the facts and circumstances of the instant matter for which he was recommending termination." Petitioner claims that the worker simply relied upon the representation of colleagues and did not adequately review the voluminous case file to form an independent opinion of what the proper disposition should have been. Petitioner further claims that, following the initial caseworker's replacement, at least three subsequent CPS workers were assigned and none of them obtained any documentation pursuant to the releases petitioner executed. Moreover, the circuit court rebuked the DHHR for causing significant issues in the case. Therefore, petitioner contends that the circuit court erred in terminating his parental rights when the DHHR failed to manage the case, failed to implement services, and failed to obtain documentation of petitioner's participation in services.

We find no merit in petitioner's arguments. This Court has previously held that

> "[a]t the conclusion of the improvement period, the court shall review the performance of the parents in attempting to attain the goals of the improvement period and shall, in the court's discretion, determine whether the conditions of the improvement period have been satisfied and whether sufficient improvement has been made in the context of all the circumstances of the case to justify the return of the child." Syl. Pt. 6, *In re Carlita B.*, 185 W. Va. 613, 408 S.E.2d 365 (1991).

Syl. Pt. 3, *In re J.G.*, 240 W. Va. 194, 809 S.E.2d 453 (2018). Here, the evidence overwhelmingly established that petitioner failed to correct the conditions of abuse and neglect. While petitioner argues that he substantially complied with his improvement period, the DHHR presented testimony

that petitioner failed to complete inpatient substance abuse treatment and parenting and adult life skills classes. Testimony established that petitioner's longest stint in a rehabilitation program lasted less than three months, which was less than the circuit court's minimum requirement of six months. Moreover, the circuit court found that petitioner avoided participating in services, such as parenting and adult life skills, by moving from treatment program to treatment program. A CPS worker testified that multiple referrals were made in different parts of the State to accommodate petitioner at whichever facility he was located; however, petitioner failed to respond to the service providers' attempts to contact him and failed to contact the DHHR to implement further services. Also, a service provider testified that petitioner cursed at C.M. during a virtual visitation and that his behavior during visits continued to deteriorate such that the child eventually refused to attend visits. Although petitioner argues that he addressed his drug addiction issues, the circuit court noted in its final order that petitioner tested positive for alcohol, methamphetamine, and amphetamine following the dispositional hearing. Thus, it is apparent that, despite petitioner's attendance at various drug treatment facilities across the state, he remained in active addiction as of the final dispositional hearing.

While petitioner testified that he completed drug treatment and other services which he sought out on his own accord, he failed to provide any documentation in support of his self-serving testimony. Contrary to petitioner's argument, the DHHR did not fail to meet its burden in this regard. In discussing evidentiary burdens, we have set forth the following:

> [a]s a general matter, the burden of proof consists of two components: burden of production and burden of persuasion. The burden of persuasion requires the party upon whom it is placed, to convince the trier of fact . . . on a given issue. When a party has the burden of persuasion on an issue, that burden does not shift. The burden of production merely requires a party to present some evidence to rebut evidence proffered by the party having the burden of persuasion. The term burden of production is also used to refer to either party presenting some evidence on a matter.

*In re A.J.*, No. 16-1015, 2017 WL 2493290 at *2-3 (W. Va. Jun. 9, 2017)(memorandum decision) (quoting *In re Tax Assessment of Foster Found.'s Woodlands Retirement Cmty*, 223 W. Va. 14, 29, 672 S.E.2d 150, 165 (2008)). In this matter, although the DHHR had the burden of proof and, thus, the burden of persuasion, as it relates to establishing that petitioner failed to remedy the conditions of abuse and neglect, petitioner had the burden of production. That is to say petitioner was required to present some evidence to rebut the DHHR's evidence submitted below. Rather than presenting the signed releases or the certificates of completion, which were allegedly in his possession, petitioner simply relied on his self-serving testimony that he completed additional services, leaving the circuit court to assess the credibility of his testimony. Ultimately, the circuit court determined that petitioner's testimony lacked credibility in the face of the DHHR's presentation of overwhelming evidence to the contrary, and we decline to disturb this credibility determination on appeal. *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997) ("A reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations.").

Lastly, we note that the circuit court specifically provided in its order that it was not shifting the burden of proof from the DHHR to petitioner. The circuit court recognized that "the burden of clear and convincing evidence [is] placed upon the State when termination is sought by the DHHR." The circuit court noted that, nevertheless, "a litigant cannot sit idly and present no evidence to support his or her testimony, especially when their testimony directly conflicts with the testimony of the opposing party." To the extent petitioner argues he should have received family therapy, petitioner fails to recognize that West Virginia Code § 49-4-610(4)(A) requires that when a parent is granted an improvement period, the parent "shall be responsible for the initiation and completion of all terms of the improvement period." The record is clear that petitioner never filed a motion or sought an order from the circuit court for family therapy. Based on the foregoing, we find that the circuit court did not shift the burden of proof to petitioner during the proceedings below. We further find that the circuit court did not err in determining that petitioner failed to substantially comply with his improvement period, given the evidence as set forth above.

We likewise find no error in the termination of petitioner's parental rights. West Virginia Code § 49-4-604(c)(6) provides that circuit courts are to terminate parental rights upon finding that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(d)(3) provides that a circuit court may find that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected when the abusing parent has

> not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare, or life of the child.

As set forth above, petitioner failed to comply with services or remedy the conditions of abuse and neglect. Moreover, testimony established that petitioner's prognosis for attaining minimally adequate parenting was extremely poor. Mr. Jones testified that petitioner failed to acknowledge the extent of the abuse and neglect he perpetrated on the children. For example, petitioner minimized the danger of C.M. wandering near a busy highway and further minimized the extent of the domestic violence in the home, the home's deplorable condition, and inadequate food in the home. Petitioner blamed everyone but himself for the situation, including the children, law enforcement, and the foster family. Mr. Jones opined that any period of sobriety exhibited by petitioner was solely for the purpose of appeasing the DHHR or the circuit court and indicated that there were no services or interventions that would assist petitioner in correcting his parenting deficiencies. Mr. Jones also testified that the children would be at risk of continued abuse and neglect if returned to petitioner's care.

Testimony also established that termination of petitioner's parental rights was necessary for the children's welfare. The circuit court found that the children's disclosures of abuse were credible and that the children had endured significant abuse and neglect over a long period of time. The children were afraid of petitioner, and C.M. refused to visit with him at times during the

proceedings. Ms. McCoy testified that the children needed extensive treatment to deal with the immense trauma that they had endured and further indicated that contact between petitioner and the children was not in the children's best interests. This Court has instructed that "[t]he controlling standard that governs any dispositional decision remains the best interests of the child." Syl. Pt. 4, *In re B.H.*, 233 W. Va. 57, 754 S.E.2d 743 (2014).

While petitioner argues that the DHHR mismanaged his case, we find no error. Although the circuit court expressed concern that multiple CPS workers had been assigned throughout the case and that the most recent CPS worker testified without having fully reviewed the case file, it nevertheless found that reasonable efforts were provided to aid petitioner in addressing his parenting deficiencies. It also found that petitioner demonstrated an inadequate capacity to solve those issues on his own or with help. The circuit court concluded that petitioner could not blame the DHHR for his failure to comply with services. It further noted that petitioner's psychological evaluation showed an extremely poor prognosis for attaining minimally adequate parenting and that petitioner's conduct throughout the case had proven that prognosis to be accurate. Having reviewed the record, we cannot find that the use of multiple CPS workers negatively impacted petitioner's ability to participate in the proceedings, especially given the testimony that petitioner was offered services and that service providers were willing to be flexible to accommodate petitioner at his various treatment programs. Petitioner failed to maintain contact or respond to their attempts at contact. Further, although the most recent CPS worker testified that he had not had time to review the whole case file, testimony established that he was assigned to the case only three weeks prior to the final dispositional hearing and that he had met with his supervisor and other colleagues who briefed him on the case and instructed him as to the DHHR's recommendation. The DHHR's recommendation that petitioner's parental rights be terminated did not rest solely on his shoulders and was, in fact, based on petitioner's failure to comply throughout the proceedings. As such, we find no error in this regard.

As set forth above, petitioner failed to remedy the conditions of abuse and neglect, the circuit court properly determined that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future, and the evidence demonstrated that termination of petitioner's parental rights was in the children's best interests. This Court has previously held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Therefore, we find that the circuit court did not err in terminating petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its June 10, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: January 12, 2022

**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins
Justice William R. Wooton

11