**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **C.M., A.M., and N.M.**

**No. 21-0515** (Braxton County 19-JA-68, 19-JA-69, and 20-JA-70)

**MEMORANDUM DECISION**

Petitioner Mother T.B., by counsel Jared S. Frame, appeals the Circuit Court of Braxton County's June 10, 2021, order terminating her parental rights to C.M., A.M., and N.M.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and James "Jake" Wegman, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Mary Elizabeth Snead, filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights when she substantially complied with her improvement period and without first ordering family counseling.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In October of 2019, the DHHR filed a child abuse and neglect petition against petitioner and the children's fathers[2] after then-three-year-old C.M. was found wandering near a busy road wearing only a diaper in low temperatures. Law enforcement officers responded to petitioner's home and spoke to D.M., who was intoxicated while caring for the children. D.M. was arrested for child neglect creating substantial risk of serious bodily injury or death, and a warrant for petitioner was issued because she left the children in D.M.'s care while he was intoxicated. The DHHR

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]D.M. is C.M.'s father and was married to petitioner at the time of the petition's filing. B.M. is the father of A.M. and N.M.

1

alleged that Child Protective Services ("CPS") workers interviewed then-seven-year-old A.M. and then-eleven-year-old N.M., both of whom reported that they lacked food in the home and that the home was in poor condition. The DHHR alleged that, upon locating petitioner later that day, petitioner submitted to a drug screen which was positive for alcohol, nonprescribed buprenorphine, and nonprescribed opioids. Petitioner also admitted to engaging in domestic violence in the home. The DHHR further alleged that, the following day, a CPS worker responded to petitioner's home and found it to be in such deplorable condition that he made a referral to the Braxton County Health Department. Lastly, the DHHR alleged that petitioner was previously twice adjudicated as an abusing parent based on truancy issues, which were resolved.

Petitioner appeared at the preliminary hearing and waived her right to contest the evidence. She tested positive for benzodiazepines and alcohol following the hearing. Around November of 2019, the DHHR filed an amended petition, adding allegations of petitioner's positive drug screen following the preliminary hearing, as well as three other drug screens submitted in November of 2019, which were positive for alcohol, benzodiazepines, and nonprescribed buprenorphine. In December of 2019, the circuit court held an adjudicatory hearing wherein petitioner stipulated to the allegations of abuse and neglect. The circuit court accepted petitioner's stipulation and adjudicated her as an abusing and neglecting parent.

In January of 2020, the guardian filed a report expressing astonishment that "it took this long for . . . actions to be taken regarding this family" after interviewing the children. The guardian reported that the children had observed extensive domestic violence between petitioner and her various partners, including petitioner's husband D.M. Both A.M. and N.M. reported that D.M. had hit them on numerous occasions while he was under the influence of drugs and caused A.M.'s nose to bleed on at least one occasion. The children further reported being locked in their bedroom and being forced to urinate in a bucket. The children also observed drug abuse and reported finding needles and burnt aluminum foil in the home. The guardian noted that the children desired to be returned to petitioner's care only if she would separate from D.M. At a hearing held later that month, the DHHR presented the testimony of a CPS worker, who recommended that petitioner be granted an improvement period. Following testimony, the circuit court took a brief recess and ordered petitioner and D.M. to submit to a drug screen, at which time D.M. tested positive for alcohol. The circuit court held D.M. in contempt and continued the hearing. Petitioner's screen was negative.

At the reconvened hearing held in February of 2020, a CPS worker again testified that the DHHR recommended petitioner be granted an improvement period. The CPS worker testified that petitioner was enrolled in domestic violence counseling through a sober living facility in Wheeling, West Virginia; was employed; and was in the process of filing for divorce given the children's desire that they not be reunited with petitioner unless she separated from D.M. The CPS worker acknowledged that petitioner was not receiving visits based upon her continued positive drug screens but recommended that visits be reinstated should she produce negative screens.

Petitioner testified that she would comply with the terms and conditions of an improvement period. She admitted that the children had witnessed significant domestic violence and abuse, but that she was taking steps to improve her situation by enrolling in a sober living facility and remaining employed.

2

Following testimony, the circuit court granted petitioner an improvement period, the terms and conditions of which required that petitioner remain drug and alcohol free, submit to drug screens, obtain and maintain employment, obtain and maintain suitable housing, undergo a psychological evaluation, complete domestic violence and substance abuse classes, and participate in supervised visitation with the children.

Shortly after the hearing, petitioner tested positive for fentanyl, alcohol, and buprenorphine. Although petitioner was prescribed buprenorphine at that time through a medically assisted treatment program, she did not have a valid prescription for any other controlled substance and was prohibited from consuming alcohol as a term of her improvement period. As a result, petitioner's visits with the children were subsequently suspended in April of 2020. However, the circuit court reinstated visits, at the children's discretion, and extended petitioner's improvement period in June of 2020.

The guardian filed a second report in October of 2020, wherein she noted that the children did not want to visit with petitioner. Specifically, following the reinstatement of visits in June of 2020, N.M. refused to visit with petitioner and A.M. and C.M. attended one visit but A.M. thereafter refused to attend any more visits. C.M. attended one additional visit with petitioner but then refused to attend any more visits. The guardian reported that, following her last visit with petitioner, A.M. "woke up in screaming rages and could not be calmed for several hours." The guardian further noted that the children "continued to disclose additional abuse the longer they have been removed" and expressed their desire to be adopted by their foster parents. Specifically, the children reported being forced by petitioner and D.M. to drink alcohol and smoke cigarettes, experiencing extreme hunger such that they resorted to eating paper, and experiencing sexual abuse by D.M.'s brother. The guardian noted that petitioner had met with her service provider only one time, in September of 2020; missed several drug screens that month; continued to reside at the sober living facility; and failed to separate from D.M., based upon the fact that he was recently found in her room at the sober living facility. Based on the foregoing, the guardian recommended termination of petitioner's parental rights.

The circuit court held two final dispositional hearings in December of 2020 and February of 2021. The DHHR presented the testimony of Candice Gabriel, a licensed forensic interviewer at Children's Listening Place, who interviewed the children. Ms. Gabriel reported that C.M.'s age and limited verbal skills made it difficult for him to communicate effectively; however, N.M. and A.M. made consistent disclosures regarding the domestic violence and drug abuse in the home, the poor home conditions, and the lack of food in the home. Ms. Gabriel also testified that N.M. and A.M. made disclosures consistent with their disclosures to the guardian, including that petitioner and D.M. forced them to drink alcohol and smoke cigarettes and that they were sexually abused by D.M.'s brother. The children reported to Ms. Gabriel that they informed petitioner of the abuse but that she took no action. Both children also reported being so hungry that they resorted to eating paper. Ms. Gabriel concluded that N.M. and A.M. were extremely fearful of petitioner and D.M., and that in her professional opinion, the children exhibited no signs of being coached to make their disclosures.

3

The DHHR also presented the testimony of Jenna McCoy, a licensed psychologist at Saar Psychological Group. Ms. McCoy testified that she performed the children's' psychological evaluations during which they disclosed drug abuse, domestic violence, extremely poor living conditions, and lack of food in the home, which was consistent with the testimony of Ms. Gabriel. A.M. further reported to Ms. McCoy that D.M. was physically abusive towards her and that on one occasion he used a garden hose with metal ends to hit her. A.M. reported that, on another occasion, D.M. hit her so hard with a hairbrush that it broke and bloodied her nose. Both N.M. and A.M. informed Ms. McCoy that they did not want to be placed back into petitioner's care, and Ms. McCoy testified that it was imperative the children receive extensive mental health treatment to learn the necessary skills to cope with the immense amount of trauma they had endured. Ms. McCoy opined that she did not believe contact between the children and petitioner was in the children's best interest.

Barbara Nelson, a licensed psychologist with Saar Psychological Group, testified regarding a psychological evaluation she performed on petitioner. Ms. Nelson testified to several significant concerns arising from the result's petitioner's evaluation, noting that petitioner acknowledged being under the influence of drugs and alcohol while caring for the children and the deplorable home conditions but failed to acknowledge any other allegations of abuse or neglect. Ms. Nelson expressed concern that petitioner was actively concealing the worst of the abuse and neglect and did not accept responsibility in that regard. Ms. Nelson stated that petitioner minimized the significance of C.M. being found wandering near a busy road and blamed her failed drug screens on a pill she obtained from her (petitioner's) mother. Based on petitioner's assessment responses, Ms. Nelson found that petitioner had a disturbing level of mental health and personality dysfunction that severely impairs her ability to adequately parent her children. Ms. Nelson noted that petitioner places her own needs and desires before her children's wellbeing and fails to consistently provide for their most basic needs. Ms. Nelson opined that these traits, attitudes, and behaviors are so ingrained into petitioner's personality that it is highly unlikely that they could be eradicated, even with treatment. Based on the foregoing, Ms. Nelson concluded that petitioner's prognosis for attaining minimally adequate parenting was extremely poor and that there were no services or interventions that could correct her parenting within a reasonable time, if at all.

A service provider testified regarding petitioner's supervised visits with the children. Specifically, petitioner attended three visits with the children before the visits were suspended in March of 2020 due to petitioner's failed drug screens. The service provider stated that, after the visits were reinstated, she supervised one additional visit between petitioner and the two younger children; thereafter, the children refused visits. In fact, when C.M. learned that a subsequent visit had been scheduled, the child became extremely upset and urinated and defecated on himself, resulting in the visit being cancelled.

A second service provider testified that she provided petitioner with parenting and adult life skills classes. Despite having received services for approximately six months, petitioner's progress was described as stagnant as she was still working on the initial goals and curriculum that she began at the start date of services. The service provider testified that petitioner cancelled multiple appointments and maintained only intermittent contact with the service provider. Petitioner's services could have been closed in September of 2020 due to her noncompliance, but the service provider's supervisor elected to not close services at that time. The service provider

expressed concern over petitioner's inability to grasp basic adult life skills like budgeting and that petitioner continuously could not account for her expenses. The service provider also expressed concern over petitioner's continued desire to maintain relationships with inappropriate persons. The service provider concluded that given petitioner's lack of progress, it was increasingly difficult to justify additional services.

A CPS worker testified that petitioner had not successfully completed parenting or adult life skills classes and that her compliance with drug screening was inconsistent. The CPS worker stated that petitioner did not maintain contact with her during the proceedings and that petitioner's employment was sporadic, at best. Further, after petitioner left her sober living facility and obtained an apartment, the CPS worker made multiple requests for petitioner's address before she eventually provided it. Once the CPS worker was able to visit the apartment, she found it to be unsuitable due to piles of trash, uncapped prescription bottles, and dangerous "construction equipment" throughout the home. The CPS worker acknowledged that petitioner recently moved to another residence which was suitable. The CPS worker testified that the two oldest children firmly expressed no desire to see petitioner and that they have a clear distrust of petitioner.

Petitioner testified that she completed a parenting course and enrolled in a domestic violence course through her sober living facility. However, she admitted that she was still working on parenting and adult life skills classes through a DHHR-affiliated service provider. Petitioner also admitted that she had not submitted to a drug screen since December of 2020 but claimed that she was told that her referral for drug screens was about to expire. Petitioner stated that she was receiving drug treatment through a Suboxone clinic and had recently been stepped down off the medication; however, petitioner did not have documentation substantiating these assertions. Petitioner also claimed that she virtually attended Narcotics Anonymous ("NA") and Alcoholics Anonymous ("AA") meetings. She stated that she signed a release for the DHHR to obtain various records for the services she sought but admitted that she failed to submit the release into evidence or supply copies of her certificates of completion. Petitioner further admitted that she had not visited with N.M. in approximately one year and had not visited with A.M. or C.M. since June of 2020. Petitioner stated that she had been keeping the "bare minimum" contact with D.M. throughout the proceedings and indicated that some of their sightings together were coincidences. Petitioner claimed that family counseling was discussed at a multidisciplinary team meeting but that the DHHR failed to set up this service. Petitioner opined that if family counseling had been implemented then all conditions that led to the petition's filing would have been corrected. Petitioner requested that the dispositional hearing be held in abeyance pending the provision of family counseling, and she further stated that she would relinquish her parental rights if counseling was not successful. Finally, petitioner opined that she had greatly improved since the beginning of her case and that she now realized how her actions were detrimental to the children.

A CPS supervisor testified that she met with petitioner's caseworker on a monthly basis and was aware that petitioner was not compliant with services. The supervisor testified that petitioner's claim that she ceased screening because her referral for drug screens was about to expire was false and that petitioner's referral never lapsed, meaning that petitioner had always been able to submit to drug screens.

Lastly, the most current CPS caseworker testified that he had been assigned to petitioner's case for approximately three weeks and had been able to briefly review the history of the case. Based on the testimony provided, the current caseworker opined that the DHHR's recommendation of termination of petitioner's parental rights was appropriate.

Ultimately, the circuit court terminated petitioner's parental rights, finding that any less-restrictive dispositional alternative was "wholly inappropriate" given that petitioner failed to substantially comply with the terms and conditions of her improvement period. The circuit court found that petitioner failed to complete parenting and adult life skills classes and failed to implement the most basic adult life skills despite the provision of these services. The circuit court further found that petitioner failed to complete domestic violence counseling or regularly attend NA or AA meetings. The circuit court expressed concern over petitioner's testimony that she completed a medically assisted treatment program given that she failed to provide any supporting documentation other than to say that she signed a release to allow the DHHR to obtain the documents. The circuit court also found petitioner's testimony regarding her employment to be suspect, as she failed to produce any paystubs and the CPS worker was unable to verify petitioner's employment. The circuit court further found that petitioner failed to regularly submit to drug screens and had not screened since December of 2020. The circuit court found that the only term and condition of her improvement period with which petitioner complied was finding appropriate housing.

In addition to petitioner's failure to complete her improvement period, the circuit court also considered petitioner's psychological evaluation report, which indicated that petitioner failed to accept responsibility for her actions and minimized the conditions of abuse and neglect, blaming the children. The circuit court found that, according to the report, petitioner lacked the motivation to address the conditions of abuse and neglect and received an extremely poor prognosis. Even more troubling to the circuit court were the psychological evaluations and forensic interviews of the children. The circuit court found the children's disclosures to be consistent and credible and further found it significant that the children refused to visit with petitioner. The circuit court was "firmly convinced" that the children endured significant abuse and neglect over a long period of time prior to the petition's filing. The circuit court noted it was "readily apparent" that the children had an innate fear of D.M. and that petitioner was well aware of that fear but "chooses to blatantly disregard the emotional well-being of her children in order to maintain her amorous relationship with [D.M.]"

Lastly, the circuit court found petitioner's arguments regarding a lack of family counseling unavailing. While the MDT discussed the possibility of family counseling, at no time did petitioner or her counsel file a motion with the circuit court requesting family counseling. Moreover, the circuit court found petitioner's arguments in this regard "to be yet another artifice attempting to divert attention away from [petitioner's] dearth compliance throughout this case." Given the foregoing, the circuit court concluded that there was no reasonable likelihood that petitioner could

correct the conditions of abuse and neglect in the near future and that termination was necessary for the children's welfare. Petitioner appeals the circuit court's June 10, 2021, dispositional order.[3]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating her parental rights when she substantially complied with her improvement period. Specifically, petitioner argues that the circuit court erred in shifting the burden of proof from the DHHR to petitioner to prove that she participated in services. Petitioner claims that the circuit court focused on the lack of documentation in support of petitioner's testimony that she had completed or participated in several services on her own. Petitioner avers that she signed releases for the DHHR to obtain those documents, and the circuit court's focus on her failure to provide either the releases or the supporting documentation shifted the burden of proof from the DHHR to petitioner. Petitioner argues that the DHHR took no steps to obtain this documentation, nor did it rebut her testimony that she completed several services. As such, petitioner contends that her testimony established that she substantially complied with the terms and conditions of her improvement period, and the circuit court erred in making findings to the contrary.

Petitioner further argues that the circuit court erred in terminating her parental rights without first ordering family counseling. Petitioner asserts that she requested family counseling on multiple occasions, and she states that the DHHR should have taken all reasonable steps and measures to attempt reconciliation but failed to provide this service. Petitioner states that there would have been no harm in providing her this service, as she agreed to relinquish her parental rights if counseling was unsuccessful. As such, petitioner argues that the circuit court erred in this regard.

---

[3]D.M.'s parental rights to C.M. were also terminated below. The father of N.M. and A.M. voluntarily relinquished his parental rights. The children were placed in a foster home, and the permanency plan is adoption by that foster family.

We find no merit in petitioner's arguments. This Court has previously held that

> "[a]t the conclusion of the improvement period, the court shall review the performance of the parents in attempting to attain the goals of the improvement period and shall, in the court's discretion, determine whether the conditions of the improvement period have been satisfied and whether sufficient improvement has been made in the context of all the circumstances of the case to justify the return of the child." Syl. Pt. 6, *In re Carlita B.*, 185 W. Va. 613, 408 S.E.2d 365 (1991).

Syl. Pt. 3, *In re J.G.*, 240 W. Va. 194, 809 S.E.2d 453 (2018). Here, the evidence overwhelmingly established that petitioner failed to correct the conditions of abuse and neglect. While petitioner argues that she substantially complied with her improvement period, the DHHR presented testimony that petitioner failed to complete her parenting and adult life skills classes. In fact, the service provider testified that, despite having provided services to petitioner for several months, she was still teaching petitioner the material from the start of the course due to her lack of participation and progression. The provider testified that petitioner cancelled multiple appointments and maintained only intermittent contact with her. The provider described petitioner's progress in the services as "stagnant" and further indicated that petitioner remained unable to perform basic adult life skills, such as budgeting and identifying appropriate acquaintances. Additionally, petitioner failed to consistently drug screen during the proceedings, missing several screens in September of 2020 and ceasing screens entirely in December of 2020. Although petitioner testified that she ceased submitting to drug screens because she believed the referral was going to lapse, the DHHR presented rebuttal testimony that petitioner's referral for drug screens never lapsed during the proceedings and that a CPS supervisor notified petitioner that drug screening was still in place as of January of 2021. Despite having this knowledge, the record indicates that petitioner did not submit to any drug screens after that conversation.

While petitioner testified that she completed other services which she sought out on her own accord, she failed to provide any documentation in support of her self-serving testimony. Contrary to petitioner's argument, the circuit court did not erroneously shift the burden to petitioner in this regard. In discussing evidentiary burdens, we have set forth the following:

> [a]s a general matter, the burden of proof consists of two components: burden of production and burden of persuasion. The burden of persuasion requires the party upon whom it is placed, to convince the trier of fact . . . on a given issue. When a party has the burden of persuasion on an issue, that burden does not shift. The burden of production merely requires a party to present some evidence to rebut evidence proffered by the party having the burden of persuasion. The term burden of production is also used to refer to either party presenting some evidence on a matter.

*In re A.J.*, No. 16-1015, 2017 WL 2493290 at *2-3 (W. Va. Jun. 9, 2017)(memorandum decision) (quoting *In re Tax Assessment of Foster Found.'s Woodlands Retirement Cmty*, 223 W. Va. 14, 29, 672 S.E.2d 150, 165 (2008)). In this matter, although the DHHR had the burden of proof and, thus, the burden of persuasion as it relates to establishing that petitioner failed to remedy the conditions of abuse and neglect, petitioner had the burden of production. That is to say petitioner

8

was required to present some evidence to rebut the DHHR's evidence submitted below. Rather than presenting the signed releases or the certificates of completion, which she claimed to have in her possession, petitioner simply relied on her self-serving testimony that she completed additional services, leaving the circuit court to assess the credibility of her testimony. Ultimately, the circuit court determined that petitioner's testimony lacked credibility in the face of the DHHR's presentation of overwhelming evidence to the contrary, and we decline to disturb this credibility determination on appeal. *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997) ("A reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations.").

Lastly, we note that the circuit court specifically provided in its order that it was not shifting the burden of proof from the DHHR to petitioner. The circuit court recognized that "the burden of clear and convincing evidence [is] placed upon the State when termination is sought by the DHHR." The circuit court noted that, nevertheless, "a litigant cannot sit idly and present no evidence to support his or her testimony, especially when their testimony directly conflicts with the testimony of the opposing party." To the extent petitioner argues she should have received family therapy, petitioner fails to recognize that West Virginia Code § 49-4-610(4)(A) requires that when a parent is granted an improvement period, the parent "shall be responsible for the initiation and completion of all terms of the improvement period." The record is clear that petitioner never filed a motion or sought an order from the circuit court for family therapy. Based on the foregoing, we find that the circuit court did not shift the burden of proof to petitioner during the proceedings below. We further find that the circuit court did not err in determining that petitioner failed to substantially comply with her improvement period, given the evidence as set forth above.

We likewise find no error in the termination of petitioner's parental rights. West Virginia Code § 49-4-604(c)(6) provides that circuit courts are to terminate parental rights upon finding that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(d)(3) provides that a circuit court may find that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected when the abusing parent has

> not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare, or life of the child.

As set forth above, petitioner failed to comply with services or remedy the conditions of abuse and neglect. Moreover, testimony established that petitioner's prognosis for attaining minimally adequate parenting was extremely poor. Ms. Nelson testified that petitioner failed to acknowledge the extent of the abuse and neglect she perpetrated on the children. For example, petitioner minimized the danger of C.M. wandering near a busy highway and blamed her failed drug screens on her mother. Ms. Nelson opined that petitioner's attitudes and behaviors were so ingrained into

9

her personality that it was unlikely they could be eradicated, even with treatment or further services.

Testimony also established that termination of petitioner's parental rights was necessary for the children's welfare. The circuit court found that the children's disclosures of abuse were credible and that the children had endured significant abuse and neglect over a long period of time. The children were afraid of petitioner and refused to visit with her during the proceedings. In fact, at the mere thought of having to visit with petitioner, C.M. urinated and defecated on himself. Ms. McCoy testified that the children needed extensive treatment to deal with the immense trauma that they had endured and further indicated that contact between petitioner and the children was not in the children's best interests. This Court has instructed that "[t]he controlling standard that governs any dispositional decision remains the best interests of the child." Syl. Pt. 4, *In re B.H.*, 233 W. Va. 57, 754 S.E.2d 743 (2014).

As set forth above, petitioner failed to remedy the conditions of abuse and neglect, the circuit court properly determined that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future, and the evidence demonstrated that termination of petitioner's parental rights was in the children's best interests. This Court has previously held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Therefore, we find that the circuit court did not err in terminating petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its June 10, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: January 12, 2022


**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins
Justice William R. Wooton

10